CHESTER WINSLOW AND WILLIAM A. BATES *v.* GORDON NEWELL.

Where the owner of land has recovered judgment in an action of ejectment against one who entered upon the land subsequent to the enactment of the Revised Statutes, the person so entering cannot recover for betterments put by him upon the land, notwithstanding he may have entered and occupied in good faith, supposing that he had a good title in fee to the land.

And *quære*, whether such person, in the absence of any law giving him a right to recover for betterments made by himself, in faith of his own entry, can recover by referring his entry to that of another person, from whom he purchased the land, and who entered previous to the enactment of the Revised Statutes.

But if he can take advantage of such former entry, he can claim nothing by it, if the person making such former entry did not suppose, at the time, that he had a good title in fee to the land.

*If* one take possession of land, and then abandon it, his possession cannot be tacked to that of the next possessor, either for the purpose of making title to the land by possession, or for the purpose of claiming any benefit by virtue of the statute in reference to betterments.

A., supposing he had good title to a lot of land, put B. in possession of the land, as tenant. B. subsequently surrendered his possession to A., and purchased of another person a title to the lot, which he did not at the time suppose to be good, and retained the possession until he sold the lot to C., who entered subsequent to the enactment of the Revised Statutes, supposing he had acquired a good title, and made improvements. A. did not convey his title and possession to any one, but subsequently abandoned all claim to the land. And it was held, that C., having been ejected from the land, could not recover for his betterments by virtue of the original entry made by B. in faith of A's title.

Winslow et al. *v.* Newell.

THIS was a declaration for betterments,—the defendant having recovered judgment against the plaintiffs in an action of ejectment for the land described in the declaration,—and was tried at the December Term, 1845,—BENNETT, J., presiding.

On trial the plaintiffs gave in evidence a deed from one Capen, collector of a land tax, to Sturgis Penfield of one hundred and sixty acres of lot No. 48 in the second division of lands in Goshen, executed and recorded Sept. 8, 1825, and also gave evidence tending to prove, that in 1835 one Goss, in pursuance of a parol agreement between himself and Penfield, entered upon that part of the lot recovered by Newell in the action of ejectment, and repaired the fences around the clearing, being ten or twelve acres, and occupied it as a pasture during the season of 1836; that in the spring of 1837 Goss received from one Stewart a quitclaim deed of forty acres of said lot, and about the same time made a parol agreement with Penfield, to purchase of him one hundred and sixty acres of said lot,—it being called a two hundred acre lot, but measuring about two hundred and twenty five acres; that soon after this Penfield sent to Goss a deed of the one hundred and sixty acres, which Goss declined to receive on account of some of its provisions; that it was then agreed between them, that Goss should continue to occupy the land as he had done before, until some new agreement should be made between them; that Goss continued to occupy the part of the lot claimed by Newell from 1835 to 1841, repairing the fences from time to time and occupying it as a pasture; that in 1840 one Stephen Lard purchased of Penfield one hundred and sixty acres of said lot, and took a written agreement for the conveyance, no boundaries or location being fixed, but Penfield then informing Lard that fifty acres of the lot belonged to Newell; that Lard made some improvements upon the lot,—but not on the part clamied by Newell; that in 1841 Lard sold his interest in the contract to one Emerson, and Penfield executed to Emerson a bond for a deed, in the terms of the agreement with Lard, and informing Emerson that fifty acres of the lot belonged to another person; that in 1842 the plaintiffs purchased of Goss his interest in the lot, and in 1843 received a deed; that the plaintiffs also, in 1842, purchased of Emerson his interest in the lot, claiming that they owned the part of the lot before occupied by Goss, and saying that they wanted the rest of the

lot to go with it, and received from Penfield a warrantee deed of the one hundred and sixty acres in discharge of his bond to Emerson; that in the spring of 1842 the plaintiffs entered upon the part of the lot claimed by Newell and erected a saw mill and expended several hundred dollars in making improvements; and that they were informed by Goss, before purchasing of him, that he thought his title to the lot good;—and Goss, who was a witness, testified, that he had consulted counsel, and thought he had a good title to the lot.

The defendant gave in evidence a deed to himself from one Sally Kendall of the fifty acres in question, and proved that the same was recorded in 1830, and also gave evidence tending to prove that he had executed leases of this land to different persons; that Goss, before he entered upon the lot, knew of the defendant's title; that the defendant continued all the time to assert his title; that the plaintiffs had knowledge of this title; that Penfield, Lard and Emerson recognized this title; that while Emerson was in possession under Penfield he and Newell surveyed the lines dividing the fifty acres from the rest of the lot; that in 1840 and 1841 the defendant leased the fifty acres, and they were occupied by his tenants; and that Goss relied upon the weakness of Newell's title and did not suppose that he had any legal title to the lot himself.

The court charged the jury, that, to entitle a party to recover for betterments, he must have supposed, at the time of his purchase, that he was obtaining a good title in fee; that if Goss did not himself put any betterments upon the land, then so far there must be an end to any claim for betterments by the plaintiffs; but that, if Goss did put on betterments, still the plaintiffs could not recover for them, unless Goss himself could have recovered for them, if he had been the defendant in the action of ejectment; and that, as it appeared from the plaintiffs' evidence, which was uncontradicted, that Goss went into possession in 1835 merely under a parol license from Penfield to occupy, and had never taken any title from Penfield, and had, after his refusal to accept the deed from Penfield, agreed with Penfield to occupy as he had first done until some new agreement should be made, there could be no ground for any claim for betterments put upon the land by Goss under any title derived from Penfield.

The jury were also told, that if they found that Goss was in possession of the fifty acres, or any part of it, under the title derived

from Stewart, supposing he had a good title in fee, and that the plaintiffs purchased that title supposing they were to get a good title in fee, and entered upon the land in 1842, supposing such title good, the plaintiffs would be entitled to recover for whatever betterments Goss put upon the land, if any, notwithstanding Goss went into possession in 1835 by the license of Penfield, and notwithstanding the deed from Goss to the plaintiffs was not executed until 1843; but that, if they found that Goss acted in bad faith, and did not suppose that he had acquired any title to the fifty acres claimed by Newell, or any part of it, under the title from Stewart, then Goss himself could not have recovered, and the plaintiffs could not recover for any betterments made by Goss.

The jury were farther told, that if they found that Goss acted in good faith, supposing he had purchased of Stewart a good title in fee to the land claimed by Newell, and that the plaintiffs purchased of Goss in good faith, supposing they were acquiring a good title in fee, they would be entitled to recover for such betterments as they had themselves made, though Goss had made none himself, and though the plaintiffs had entered upon the land in the spring of 1842, and since the enactment of the Revised Statutes; but that, if Goss did not suppose he derived any good title from Stewart, then the plaintiffs could claim no benefit from his entry; and, as their entry was subsequent to the time when the Revised Statutes came into operation, they could not recover for betterments made by themselves.

The jury returned a verdict for the defendant. Exceptions by plaintiffs.

*Linsley* and *Beckwith* and *A. Peck* for plaintiffs.

*Briggs & Williams* for defendant.

The opinion of the court was delivered by

REDFIELD, J. In this case I do not understand that there is any pretence of recovering for betterments made by Goss under the Stewart title; for the jury have found that he did not *suppose that deed* gave him any title to the fifty acres, for which the defendant recovered in ejectment. There is, indeed, nothing in the case to show that Goss ever made any betterments on the lot, unless his put-

ting up the fences and occupying the pasture is to bear that con-struction ;—but, allowing that he did, he could not recover for them on the ground of the Stewart title, which he did not suppose ex-tended to this part of the lot.

It seems equally clear, that the plaintiffs cannot recover for the betterments which they have themselves made, by resting upon the entry made by Goss, when Goss himself is found to have entered not supposing that he had any title to this part of the lot. It is some-what questionable, perhaps, whether the plaintiffs can recover for betterments made by themselves, when no law existed giving them any such right, by referring their entry to a time anterior to that when it actually occurred. But however that may be, it is certain they cannot, by virtue of the entry of Goss, place themselves in any better condition, than that in which *he was.* It would be an anomaly, to permit the plaintiffs in this case to claim betterments upon the strength of an entry in bad faith, because they purchased it in good faith and made the improvements supposing they had a good title in fee, when in fact there was no law in existence giving *them* any right to recover on the strength of their own *bona fide claim of title in fee,* and the facts would not bring them within the provisions of the statute, by tacking their betterments to the one under whom they claim. The plaintiffs ought to be content, if the court suffered them to put the case both upon their own title and that of their grantor, although in one case the *law* failed them, and in the other the *facts.*

All claim on the ground of the plaintiffs' own entry and that of Goss being disposed of, it only remains to inquire, whether the plaintiffs can so connect themselves with Penfield's entry upon this lot, as thereby to claim to recover, either for betterments made by him, or his servants, or tenants, or made by the plaintiffs in faith of his title and entry upon the lot.

There may be some confusion in the statement of the case ; and possibly the court, after all, do not get a correct understanding of it. But it would seem, that, if Penfield ever authorized any entry upon the land in controversy under himself, it was not persisted in, but abandoned. For we find, that neither Penfield, Lard, nor Emerson, ever entered upon *this land,* or made any claim to it, but expressly acknowledged the claim of the defendant. The plaintiffs purchased Penfield's title upon the express ground that it was confined to the

other part of the lot; and they have no claim of title to this portion of the lot, under Penfield.

It is well settled, that if one enter upon land and occupy, and then abandon his possession, it cannot be tacked to that of the next possessor, for the purpose of making title to the land by possession. By the abandonment the possession is gone, for all such purposes. The fifteen years' possession, necessary to give title, must be under one *connected claim* of title, although it may be by numerous persons, and may pass from one to the other by *parol merely;* still, it must be *connected.*

So, too, in these betterment cases, if one enter upon land by a tenant, or servant,—as Goss testified Penfield did, upon this land, by him,—yet if he afterwards abandon such entry, and do not convey it to any one, either by deed, or parol, it is impossible for one, who purchases the right of the tenant, who continues in possession under another title, which proves defective, to eke out his own title by a resort to this first entry, upon the ground, that, *at that time,* the landlord *supposed* he had good title *to this part* of the lot also. For in this case it appears, that Goss finally surrendered to Penfield all right of possession under him, and Penfield abandoned all claim to this portion of the lot, and Goss continued his possession under another title,—which merged whatever former right *he* had.

The difficulty in the plaintiffs' justifying their putting betterments upon this lot, under Penfield's entry by Goss, is, that they do not show that they have ever entered upon this portion of the lot *under Penfield,* or in faith *of his entry,* or of *any entry under his title,*—but the contrary.

We think, therefore, the defendant is entitled to judgment on the verdict.