ROSWELL WHITNEY *v.* LORENZO H. RICHARDSON AND RILEY M. RICHARDSON.

#### *Betterments.    Ejectment.*

The sole test of the right of a defeated defendant in an action of ejectment to recover for betterments, is the fact that he, (and those under whom he claims, so far as improvements by them are concerned), purchased, supposing that they thereby obtained a good title in fee; and this right does not depend upon the nature or kind of title which the real owner may have, nor upon his having had a right to the immediate possession at the time the betterments were made; nor upon his negligence in asserting his title.

The constructive notice which the law implies from the registry of a deed is not sufficient to preclude one from recovering for betterments, who in fact purchased in good faith and with the supposition that he was obtaining a perfect title in fee.

If the defendant in ejectment purchased with the belief that he was obtaining a perfect title in fee, the fact that a party in the chain of his title purchased without such a belief on his part, does not prevent the defendant from recovering for betterments made by all others in the chain of his title who purchased with such a belief on their part, whether prior or subsequent to such party.

Notice *after* purchase, to a grantee, who purchased, supposing his title to be good in fee, that it was doubtful, will not prevent him from recovering for improvements thereafter made.

The plaintiff purchased and entered upon certain premises in 1845, supposing that he thereby gained a good title in fee. In 1857, a judgment in ejectment was rendered for the same premises against him. *Held*, that, though no law allowing a recovery for betterments in such a case existed at the time of his entry, yet the act of 1848, (sec. 33 chap. 38 comp. statutes, p. 288,) as well as that of 1856, (No. 18 Laws of 1856, p. 18), gave him a right to such recovery.

Whitney *v.* Richardson et al.

DECLARATION FOR BETTERMENTS upon lands in Westminster, recovered by the defendants of the plaintiff in an action of ejectment, at the April Term, 1856, of the Windham County Court. Plea, the general issue, and trial by jury, at the April Term, 1857, of the Windham County Court—UNDERWOOD, J., presiding.

The plaintiff introduced in evidence a deed of the premises in question, from James Richardson to Lyman Richardson, and to the heirs male of his body, and to their heirs of the first generation. This deed was dated April 14, 1807, and was duly recorded in the town clerk's office in Westminster, April 29, 1819. The plaintiff also put in evidence certified copies of the record of the following deeds of the same premises, viz:—from Lyman Richardson to Riley Whitney, dated December 10th, 1831 ; from Riley Whitney to Leonard Cragin, dated October 21, 1836 ; from Leonard Cragin to John C. Richardson, dated January 6, 1841, and from John C. Richardson to the plaintiff, dated August 18, 1845. All these deeds except the one from James Richardson to Lyman Richardson, purported to convey the premises in fee simple, and they all contained the usual covenants of seizin and warranty.

The plaintiff also introduced evidence tending to show that all the grantees in the above mentioned deeds, subsequent to Lyman Richardson, purchased the premises supposing that they were purchasing a title in fee simple, and that all of them, including the plaintiff, made improvements on the premises, and made them better from time to time.

The evidence introduced by the defendants tended to show that while Cragin was in possession of the demanded premises, after his purchase, he was told that his title was defective, at which he appeared surprised ; also that John C. Richardson, before his purchase of the premises, knew the state of the title, and was aware that there was some question whether Lyman Richardson's deed conveyed a title in fee simple to the premises.

It appeared that Lyman Richardson died in New York in 1852, and that the defendants were his only male heirs.

The defendants insisted and requested the court to charge the jury, first, that the plaintiff could not recover for any betterments

made in the premises before Lyman Richardson's decease; because up to that time the possession of the plaintiff, and those under whom he claimed, was not adverse, and no person had any right to oust them, as they had an estate for Lyman Richardson's life; second, that there was no law authorizing a claim for betterments when the defendant's right of entry into the land in question accrued, nor when the declaration for betterments was filed; third, that if the occupants had notice of the character of their title they could not recover for betterments, and that the record of the deed from James Richardson to Lyman Richardson was conclusive notice of the state of title to all in the same chain of title; and fourth, that no betterments could be recovered which were made anterior to the possession of an occupant having actual notice of the real state of his title.

But the court refused so to charge the jury, and did charge them that if they found that, in point of fact, the plaintiff, or those under whom he claimed, had good reason to suppose, and did suppose, that at the time of their purchases, respectively, they acquired a perfect title in fee simple, the plaintiff would be entitled to recover for betterments, made by such of them as bought under that supposition; but that if any one of them in the chain of title did not at the time of his purchase suppose, or did not have good reason to suppose, that he acquired such a title, the plaintiff could not recover for betterments made by such party.

The jury were further told that though a grantee might, *after* his purchase, be informed that his title in fee was doubtful, yet it would not prevent the plaintiff from recovering for betterments made by such grantee, provided the latter, at the time of his purchase, supposed his title was perfect.

To the refusal of the court to charge as requested, and the charge as given, the defendants excepted.

*A. Stoddard, A. Keyes* and *B. W. Dean*, for the defendants.

1. The betterment law applies only to cases of possession adverse to the legal title. It was never intended to encumber estates in remainder, reversion, or entail with the value of improvements made by the tenant for life, or party in possession of an estate held by legal title. If the effect contended for by the

plaintiff be given to the statute, the remainderman or reversioner would often find their estates rendered valueless by the incumbrance, or, it may be, set off under the provision of the statute to pay the value of the improvements, and the title transferred to another. *Lincoln* v. *Root*, 8 Pick. 376 ; *Mason* v. *Richards*, 15 Pick. 141 ; *Larcom* v. *Cheever*, 16 Pick. 260 ; 15 Mass. 291 ; 13 Mass. 241 ; *Varney* v. *Stevens*, 9 Shepl. 331 ; 1 Greenl. 91 ; *Ib.* 315 ; *Treat* v. *Strickland*, 10 Shepl. 234 ; *Schroll* v. *Klinker;* 15 Ohio 152 ; *Waldron* v. *Woodcock*, 1 Indiana 13.

2. The record of the deed from James Richardson to Lyman Richardson was conclusive notice of its contents and legal effect to the plaintiff, and all in the same chain of title, and of the character of their estate, for all purposes whether in law or equity. 1 Story's Eq. Jur. sec. 403 ; 4 Greenl. Cruise 555, note ; 4 Kent 177 ; *Bates* v. *Norcross*, 14 Pick. 244 ; *Tilton* v. *Hunton*, 11 Shepl. 29 ; *Bigelow* v. *Topliff*, 25 Vt. 273 ; *Barnes* v. *Baylies*, 18 Vt. 430.

3. A grantee can not occupy a better position in regard to improvements made by the grantor than the latter himself occupied. Hence, if any one of the several purchasers and occupants knew of the defect in his title at the time of his purchase and entry, he could not recover for his own improvements nor for those made by those under whom he claimed. *Winslow* v. *Newell*, 19 Vt. 164.

The plaintiff therefore, can not recover the value of improvements made by a party prior to the entry of a purchaser with notice of the defective state of the title. As the testimony tended to show such notice to Cragin and John C. Richardson, the jury were not properly instructed in this respect.

4. The jury were told that though any one grantee might *after* his purchase be informed that his title in fee was doubtful, yet it would not prevent the plaintiff from recovering for betterments made by him, provided *at the time* of his purchase he supposed his title was perfect.

If this instruction be correct, notice by the reversioner or remainderman would be of no avail after the occupant had gained possession. The tenant might go on improving the estate for his own enjoyment, according to his peculiar tastes, and subject an

after tenant, remainderman or reversioner to the payment of the expenses of such improvements, or to a forfeiture of the property.

This doctrine would be inequitable and intolerable, and would be clearly an infraction of the rule of law that no person shall be allowed to make another his debtor without his consent.

*Wm. C. Bradley* and *D. Kellogg*, for the plaintiff.

1. It is objected to the plaintiff's recovery, that the possession of those, under whom he claims, was not adverse, that they were tenants for life and that no person had the right to oust them during Lyman Richardson's life time.

Whatever might be the case with Lyman Richardson, it is found that Riley Whitney made a purchase of a fee simple, and entered under it. This was of course adverse to any claim of the defendants. Here the statute steps in and declares that if he made this purchase, supposing his title to be good (as the jury have found), he was entitled to his betterments.

2. But it is said that the deed to Lyman Richardson from his father was on record, and that this was conclusive notice to Riley Whitney. This is carrying the doctrine too far. The statute was made expressly to save purchasers from the responsibility of deciding upon the legal validity of titles. If the fact had been brought to the purchaser's actual knowledge, it would be only an ingredient of evidence from which the jury might have inferred, that at the time of purchase he could not have supposed that he was purchasing a good title. No such knowledge is pretended, and the jury have found that he did entertain the supposition required by the statute. The statute was made for the benefit of laymen, and at the time when Riley Whitney purchased it was generally understood that entails did not exist in this State. It would at that time have required a very astute person to discover, if inquiry had been made, that Lyman Richardson being in possession, did not own the farm he claimed in fee simple.

3. Nor is it of any importance whether the defendants claiming in tail could or could not have entered, for the statute does not put the matter on the nature or kind of their title, but upon the

Whitney v. Richardson et al.

plaintiff's supposing that he purchased the title ostensibly conveyed to him. In the view of the legislature, whenever the defendants obtain their land, they take it, made by the plaintiff's expenditure so much better than the land originally conveyed to them, as the amount of the judgment against them. This expenditure the plaintiff equitably ought not to lose, or the defendants to gain, and as it is, they are gainers at any rate, for they recovered for the rent of the plaintiff's betterments in estimating their damages in the ejectment.

4. As to the right of the plaintiff to file his declaration for, and recover his betterments, it is to be observed that the act is always in force, but limited in its operation to those who shall have entered before a time prescribed. The entry of the present plaintiff accrued August 18, 1845, and the periodical limitation has been twice taken off since, viz: November 9, 1848, and October 1, 1856, and moreover the respective grantees purchased the betterments of those under whom they claimed, so that the plaintiff was entitled to these as well as to his own improvements. It would be a question therefore, not as to the filing his declaration, but as to the amount to be recovered.

The case of *Winslow* v. *Newell*, 19 Vt. 169, was that of one who entered after the limitation had expired, and went to trial before it was again extended, and he could not claim for improvements made by his grantor, because they were made in bad faith,

ALDIS, J. On the 14th of April, 1807, James Richardson conveyed the demanded premises to Lyman Richardson and the heirs male of his body begotten, and to their heirs of the first generation. By this deed Lyman Richardson took an estate for life; the defendants, the reversion in fee simple. On the 10th day of December, 1831, Lyman Richardson conveyed the premises to Riley Whitney by a deed, with the usual covenants of seizin and warranty; and from Riley Whitney the land has passed through intermediate grantees by deeds of warranty to the plaintiff.

The jury have found, under the charge of the court, that the plaintiff and those under whom he claimed from Riley Whitney, had good reason to suppose and did suppose, that at the time of

their purchases respectively, they acquired a perfect title in fee simple. The defendants, the only male heirs of Lyman Richardson, having recovered since his decease in an action of ejectment against the plaintiff, the plaintiff has filed his declaration for betterments.

The defendants insist that the plaintiff and those under whom he claims, having purchased under a title from Lyman Richardson, (who was merely a tenant for life) and thus obtaining by the purchase only a life estate, and not being liable to be ousted until the termination of the life estate, can not avail themselves of the benefit of the betterment act, even though at the time of their purchase they supposed the title they acquired to be good in fee.

The language of our statute, chap. 38 sec. 15 comp. stat. is, " if the defendant, or those under whom he holds, have purchased a title to such land, *supposing at the time of such purchase such title to be good in fee*, such defendant shall be entitled to recover the full value of all improvements made upon the land by the defendant or those under whom he claims." In terms the plaintiff clearly comes within the statute. It is urged by the defendants that in ordinary cases the owner can sue and eject the occupant of the land, and therefore if he omit to do so an equity arises in favor of the occupant to recover for his betterments ; but that in this case, as the reversioner could not sue for the land till the decease of the tenant for life, he has not been guilty of negligence, and no equity arises against him ; that this case therefore is not within the spirit, and ought to be an exception to the terms of the statute. This argument seems to us to be founded upon a misconception of the principle upon which this legislation stands. The right of the occupant to recover the value of his improvements, does not depend upon the question whether the real owner has been vigilant or negligent in the assertion of his rights. It stands upon a principle of natural justice and equity, viz : that the occupant in good faith, believing himself to be the owner, has added to the permanent value of the land by his labor and his money, is in equity, entitled to such added value, and that it would be unjust, that the owner of the land should be enriched by acquiring the value of such improvements without compensation

to him who made them. This principle of natural justice has been very widely, we may say universally, recognized. It was a doctrine of the civil law; it has been adopted and enforced in courts of equity.

A brief reference to the early legislation of this State shows that this was the principle upon which the betterment acts were established. Immediately after the establishment of Vermont as a separate State, and so from 1778 to October, 1781, a period during which all land titles were in doubt and controversy, it was enacted that no court should take cognizance of any matter in which the title of land was concerned. During that period commissioners were appointed to settle land titles and report to the General Assembly who were the true owners, and " *the remittances the feeholders should make to the other claimants.*" The act to prevent unlawful settlement on unappropriated lands, passed in March, 1780, provides : " nothing in the act shall be construed to debar any person from recovering pay for labor, settlement, etc., when such settlement was made through mistake or on a supposed legal title."

In October, 1781, see Slade's State Papers, p. 442, an act was passed entitled " An Act to enable persons who have entered and made improvements on lands, under color of title, who shall be driven out of possession by a legal trial at law, to recover the value of what the estate is made better by such improvements, from the rightful owner of the land."

The preamble is : " Whereas, many persons have purchased supposed titles to lands within this State, and have taken possession of such lands under such supposed titles, and made large improvements on the same ; and who having no legal title to such lands, must, if the strict rules of law be attended to, be turned off from their possessions made at great labor and expense, and others, who have wholly neglected the settlement of the country, will enjoy the benefits of their labor, *therefore, be it enacted,*

That when any person or persons, in the actual possession and improvement of lands, to which he, she or they, so in possession, have purchased a title, *supposing at the time of purchase,* such title to be good in fee, shall be prosecuted," etc., such possessor may recover of the owner " so much money as shall be judged

equitable, on the whole view of the matter, in consideration of the possessor having settled thereon," he filing a declaration " for *so much as the estate is made better as aforesaid."* Upon the passage of this act, the laws prohibiting courts from trying titles to land were repealed.

In October, 1785, a new act was passed, substantially and in principle, like the act of 1781, but defining with more precision the rule of damages, viz : " the value of the improvements and betterments made on such lands by the possessor or those under whom he holds." One provision of this act was " that settlers who took possession prior to October, 1780, *having no supposed title,* might recover for their improvements ; but this feature of the law was soon repealed. In 1800 another act was passed, the preamble stating the principle even more fully.

In the revision of 1839 the preamble of the acts was omitted, but the language of the act of 1800 has been substantially observed. It is obvious from the language of these early acts that the principle upon which they were enacted was one of equity towards the actual *bona fide* possessor ; and that his right to his improvements was held paramount, whether the real owner of the fee had or had not been negligent.

For the same reason his right is not affected by the nature or kind of title, which the real owner may have, whether such title be an estate in fee, for life, or a reversionary interest; and whether the owner have or have not a right to the immediate possession. The right of the possessor is by the very words of the act made to depend not upon the nature of the estate outstanding in the real owner or owners, but upon his buying the land supposing that he was acquiring the title in fee, and upon his making improvements under such a purchase.

II. It is also claimed by the defendants that the record of the deed from James to Lyman Richardson was conclusive notice to all who held by deed from Lyman, that he only held a life estate, and that they, holding under him, could only hold a life estate ; and that such constructive notice, as matter of law, precludes the plaintiff from claiming that at the time of the purchase he supposed he was acquiring a good title in fee.

But such constructive notice may exist without any actual

knowledge or notice to the plaintiff, or his grantors, of the true state of the title, or even of the existence of the deed on record. Without such actual knowlege the plaintiff may honestly have believed, and the jury in this case have found that he did believe, that he was purchasing from Lyman Richardson a good title in fee.

Again, if the plaintiff had known of the existence of the deed on record, he might honestly have supposed that his grantor had bought in or cut off the estate tail, and so was able to convey to him the fee. He might at the time he took his deed, even with the advice of counsel, have well believed that the entail was void, and that a title in fee had passed by the deed from James to Lyman Richardson; for the question was not then settled by adjudication, and learned counsel differed as to the law.

The right of the plaintiff is made by the statute to depend, and in equity ought to depend, upon his *bona fide* supposition that he was buying a title in fee; and not upon whether he actually was buying the fee, or might by a diligent search of the records have discovered that his grantor only owned a life estate.

Under our registry system purchasers are affected with constructive notice of the record title, and in many, perhaps in most cases, the title of the true owner appears of record. Has it ever been held or supposed that the honest purchaser and occupant could be deprived of the value of his betterments by the existence upon record of a title superior to his own ? Was not this one of the evils this statute was intended to remedy ? If in one case constructive notice be held sufficient to affect the possessor with knowlege of the infirmity of his title, when in fact he has no such knowledge, why should it not be so held in the other ?

III. The case of *Winslow et al* v. *Newell*, 19 Vt. 164 seems to recognize that construction of the statute which precludes one who purchases, supposing he gets a good title, from recovering for betterments made by one who did not suppose he had a good title, although the last purchaser may have paid for the full value of the improvements. The court in charging the jury in this case said, if any one of those under whom the plaintiff held did not at the time of the purchase suppose he was acquiring a good

title, the plaintiff could not recover for betterments made by *such party*. The defendants insist that the court should have gone still further and charged the jury that in such case the plaintiff could not recover, either for betterments made by such party, or by any one prior to such party in the chain of title, though such prior party or parties supposed they were buying in fee. The court is not disposed to adopt this doctrine. It does not seem equitable. It extends the effect of bad faith beyond the parties implicated in it. Its operation would work injustice. It is not consistent with the analogies of the law.

IV. The defendants also claim that notice to a grantee *after* his purchase that his title in fee was doubtful, would prevent him from recovering for improvements thereafter made, though at the time of his purchase he supposed his title in fee to be good. But this would be engrafting a new provision upon the statute. Such a construction would be inconsistent with all the past practice and decisions in such cases, and with the express language of the act.

It is also urged that as the betterment act restricts its operation to those who entered before the passing of the act, and as at the time of the plaintiff's entry (August 18, 1845) the then existing act could not apply to him on account of the restriction, he can not now avail himself of its benefits. But the restriction has been removed twice since 1845; viz: in 1848 and in 1856. It has always been held in this State and may be considered as settled law, that the act is always in force, but suspended in its application by the restriction, and that when the restriction is repealed the act extends to all who were before within the restriction.

*Winslow* v. *Newell*, 19 Vt. 169 was a case where the plaintiffs could not recover for betterments made by themselves, because they had both entered upon the land, and had come to trial for their betterments while the restriction was in operation in regard to them; and they could not recover by virtue of claim under their grantor, because he did not suppose he had a good title It is not against the settled course of decisions on the subject.

Upon the whole, we find no error in the proceedings of the county court, and the judgment is affirmed.