FRANKLIN HAVEN & another *vs.* NATHANIEL ADAMS & another.

If, during the pendency of an action to foreclose a mortgage of land, the mortgagor leases and delivers possession of a portion of the mortgaged premises to a tenant, who retains the actual possession thereof under a claim of right, by virtue of certain provisions of the mortgage, after formal possession has been delivered to the mortgagee upon the execution recovered in his suit, and it is afterwards adjudged, in a writ of entry brought to try the title, that the mortgagee is entitled to possession as against such tenant, he may recover damages for rents and profits from the time when the formal possession was delivered to him, and is not limited to the time of the commencement of his action.

Such tenant, having taken his title *pendente lite*, cannot be allowed compensation for any buildings or improvements made or erected on the premises by him, although he had reason to believe his title to be good; but damages should be assessed for the rents and profits of such buildings and improvements, as well as of the land.

The Gen. Sts. *c.* 134, §§ 18, 19, allowing compensation to tenants in real actions for buildings or improvements made or erected on the premises, under certain circumstances, are not applicable to the case of buildings or improvements made or erected by a mortgagor or any person claiming under him.

WRIT OF ENTRY. After it had been determined that the demandants were entitled to recover, (4 Allen, 80,) questions arose concerning the value of the rents and profits, and of the

improvements made by the tenants, which were referred to an assessor, who reported the following facts:

The action to foreclose the mortgage was commenced on the 11th of April 1857. The lease to the tenants was dated May 1, 1858. In 1858, the tenants erected upon the demanded premises a brick warehouse, at a cost of $20,500, in pursuance of the lease, by which they were to hold the land and warehouse, and to receive and retain to their own use the rents and income thereof, until the cost of the erection and interest thereon should be reimbursed to them. Conditional judgment in said action was rendered on the 6th of May 1859, and formal possession of the mortgaged premises was delivered to the trustees on the 22d of July 1859; but the actual possession of the premises demanded in the present action remained with the tenants. The present action was commenced on the 23d of November 1860. The demandants claimed to recover damages for the rents and profits received by the tenants since the 22d of July 1859; but the tenants insisted that they were only liable for such as had been received since the commencement of this action.

The tenants also alleged that they have held the premises under a title which they had reason to believe good, and they claimed compensation for the value of their improvements. It appeared that they were aware of the mortgage when they took their lease; that Mr. Whiting, a counsellor at law, who drew the mortgage, assured them that they would be safe in taking the lease; that the demandants were informed of the terms of it, and signified their approval thereof, which was communicated to the tenants; that the tenants understood that the assent of the trustees was necessary, and in the draft of the lease a clause was inserted, to be signed by the trustees, by which they would signify their assent and approval, and the tenants were assured, by the party with whom they contracted, that the trustees would sign it; but in fact the trustees did not sign it, and the tenants did not confer with the demandants or consult counsel, except as stated.

The assessor found the value of the improvements to be

$18,400, and he also found the value of the land ; and he assessed the rents and profits in the alternative, exclusive of the value of the use of the tenants' improvements, and inclusive of such value, from the periods contended for by both parties.

The questions of law arising on this report were reserved by the chief justice for the determination of the whole court.

*S. Bartlett*, ( *G. G. Hubbard* with him,) for the demandants.

*J. G. Abbott & J. W. Rollins*, for the tenants.

CHAPMAN, J. The ground on which the demandants are entitled to recover in this action is stated in the report of this case in 4 Allen, 80. They had recovered a conditional judgment in an action against the mortgagors and the second mortgagees of a tract of land of which the premises demanded in this action constitute a part, and had been put in possession under a writ of *habere facias.* The tenants were then in possession under a title which they derived from the mortgagors and those claiming under them, during the pendency of the action for foreclosure, and were not actually expelled, but remained in possession. But they did not remain by consent of the demandants. On the contrary, they set up a title adverse to that of the demandants, and it has been heretofore decided in this action that they were disseisors.

One of the questions which now arise upon the report of the assessor, who was appointed to hear the parties upon the demandants' claim for rents and profits, and the tenants' claim for improvements, is, whether the demandants shall recover rents and profits from the time when the adverse possession of the tenants commenced, or from the date of the writ. The tenants contend that until the date of the writ they remained in possession by license of the demandants, and therefore were not liable to pay rent. They do not allege that there was any express license, but they contend that it is to be legally implied from the facts in the case. But the court are of opinion that this position cannot be maintained. Until the demandants were put in possession under their writ of *habere facias*, the mortgagors and the tenants claiming under them were entitled to the rents and profits. *Wilder* v. *Houghton*, 1 Pick. 87. From that time

the demandants became entitled to them. If the tenants had remained in possession by their consent, they would have been liable to pay rent as tenants at will. But as they set up an adverse title, and remained in possession asserting it, they assumed the liability of disseisors, and in this action they must be treated as such from the time when their adverse occupation commenced. Their whole defence in this case is utterly inconsistent with the idea of a license from the demandants, for it sets up a title in hostility to that of the demandants.

The tenants further contend that they are entitled under Gen. Sts. *c.* 134, §§ 18, 19, to compensation for the value of the warehouse mentioned in the assessor's report. While the suit for foreclosure was pending they took their title under the mortgagors, made their entry and erected the warehouse; and they have offered evidence, which is reported by the assessor, tending to show that they held the premises under a title which they had reason to believe good as against the demandants. We assume that the evidence is sufficient to prove the fact, and that they actually believed that the mortgagors had reserved in the mortgage a power to themselves to create new estates at their own pleasure, which should supersede the estate of the mortgagees, and destroy the security which was given by it to the bondholders. It would be a strange thing if a pledge should be given as a security for a debt, with a right reserved to the pledger to retake it at pleasure without payment of the debt; or that a grant should be made with a power reserved to the grantor to supersede it at his pleasure by a new grant to a stranger. But if the tenants supposed that such a power had been reserved, and that they had obtained an estate in the premises by virtue of a valid execution of such a power, and erected their warehouse under that belief, still they cannot avail themselves of it in this action, consistently with any legal rules. They did not enter and take possession by a title derived from strangers, and oust the mortgagors, so as to enable the mortgagors to plead the ouster in abatement of the writ brought for the purpose of foreclosure. See *Weston* v. *Spiller*, 2 Allen, 125. But they entered under the mortgagors, and thus, coming in *pendente lite*, were subject to

such judgment as might be rendered in that suit. *Borrowscale* v. *Tuttle*, 5 Allen, 377.

If the right of the mortgagees to recover in that action had been defeated by the act of the mortgagors in making this title to the tenants, it would have operated as a good defence to that action. It would have barred the demandants' right to recover as effectually as a release or a payment. But no such defence was interposed; and the conditional judgment in that suit was conclusive as to the rights of the mortgagors, and all who had come in under them while the suit was pending. The tenants were then in as mere holders of the equity of redemption. They deny that they had actual knowledge of the pendency of the suit; but this cannot avail them. Purchasers *pendente lite* cannot alter the rights of a demandant. The means of knowledge were open to them, and prudence would have dictated an examination of the records of the court, as well as of the registry of deeds. *Lis pendens* is notice to all the world. Bouvier's Law Dict., and cases there cited. They must in this action be treated as in possession by an act of disseisin committed subsequent to the execution of the *habere facias*, and no notice can be taken of the erection of buildings prior to that time, any more than of prior rents and profits.

There is still another objection to their claim for improvements. They hold the equity of redemption, and might at any time, within the time limited by law, avail themselves of the value of their warehouse by redeeming the mortgaged premises. A bill in equity brought by the Boston and Worcester Railroad Corporation to redeem the mortgage is in fact pending, and the terms upon which they may redeem are to be settled at the same time with the decision in the present action. In the suit to redeem, the demandants must account for the rents and profits which they recover in this action. These rents and profits avail the demandants merely as an increase of their security. The same is true in respect to the warehouse. There is, therefore, no reason why the tenants should recover compensation for the warehouse. If they were to do so, the demandants would be obliged first to pay its value to the tenants, and

then to restore it to the holders of the equity of redemption, without any remuneration. The provisions of Gen. Sts. *c.* 134, §§ 18, 19, are not applicable to such a case. They are intended to provide for cases where the demandant acquires by his judgment an absolute and indefeasible title to the land. In such cases it is equitable that he should pay for improvements that have been made by the tenant in good faith and by mistake, because he obtains the benefit of them. The statutes on this subject have much natural equity for their basis. *Whitney* v. *Richardson,* 31 Verm. 300. *Plimpton* v. *Plimpton,* 12 Cush. 458. But where a mortgagor or those claiming under him make improvements, they may avail themselves of their improvements by merely paying the debt for which the land is pledged. If the debt is not paid, and the mortgagee is compelled to bring an action for foreclosure, he does not in such action recover for rents and profits, and there is no reason why he should pay for improvements.

Upon these views of the case, the assessor was right in including the buildings in his estimate of rents and profits. The judgment in the action for foreclosure was, that the demandants should recover the land described, with the appurtenances; thus including the warehouse. Upon taking possession under that judgment, the demandants were entitled to hold the building. The disseisin for which the present suit is brought includes that as well as the land, and the claim for rents and profits extends to all the property of which the tenants disseised the demandants.

The assessor's report states the rents and profits up to October 1st 1863. While the questions here decided have been pending the adverse possession has continued, and thereby a further claim for the subsequent rents has accrued; and it is necessary to recommit the report to the assessor in order that the amount may be settled up to the time of rendering judgment.