## FEE v. COWDRY, ET. AL.

1. STATUTES: *Betterment Act is constitutional: Improvement by life tenant.*
   The Betterment Act (*Sec. 2644, Mansf. Dig.,*) is constitutional; and the occupant who holds under color of title, and in good faith, believing himself to be the owner, makes improvements and pays taxes on land, either before or since the passage of the act, cannot be dispossessed without compensation for the improvements and taxes; and this (as to the improvements) though he owned the life estate at the time of the improvements, if he held under a deed for the fee

and believed that he owned the fee. He must, also, be repaid the improvements and taxes accruing and paid after the termination of the life estate, and before notice of the remainder interest.

APPEAL from *Marion* Circuit Court in Chancery.
Hon. J. M. PITTMAN, Circuit Judge.

*W. F. Pace* for Appellants.

The court erred in instructing the jury to assess the value of improvements made before the 8th of March, 1883. *Acts 1883, p. 106; Kent's Com., Vol. II, p. 334, etc.*

*L. Gregg* for Appellees.

The judgment was correct, a single judgment fixing the liability of all parties, and giving appellants the relief prayed upon their payment of the betterments found to be a lien of the land. *38 Wis., 636; 55 Mo., 264; 18 Bla. C. C., 202.*

Betterment acts in no way impair the obligation of contracts; they only require land owners to be vigilant, and subject them to an equitable adjustment if they suffer one under a chain of title to hold possession and make valuable and lasting improvements. *18 Blatch. C. C., 202; 48 Conn., 577; 55 Texas, 319; Sedg. & Waite Trial of Title to Land, 484; 19 Wis., 219; 14 Ill., 171; 23 Ark., 644; 1 Blackf., Ind., 374.*

BATTLE, J. Strother C. Myers purchased the land in controversy, on the first day of August, 1853, and took possession and held it until about the first day of July, 1869, when he died intestate, without wife, children, father or brothers surviving him. He left his mother, Margaret Myers, and three sisters, and the descendants of a deceased sister, his heirs at law. Margaret

Myers became the owner of the land for and during her natural life. She died the fifth day of September, 1882. Appellants, who are the sisters and the descendants of the deceased sisters of Strother C. Myers, thereupon became entitled to the possession of the land and to hold the same in fee simple.

On the twenty-fourth day of November, 1871, Margaret Myers undertook and pretended to convey the land in controversy, in fee simple, to William H. Kellow, and he conveyed to W. B. Camp, some time during the year 1873. Camp, representing that he had a good title to the land, on the twenty-fourth day of July, 1875, for a valuable consideration, pretended to convey the same, by warranty deed, in fee simple, to W. Q. Sewell, one of the defendants and appellees herein. Sewell, thereupon, took possession of the land, and has at all times thereafter held the same. After this, and during the lifetime of Margaret Myers, he made and erected, on the land, lasting, permanent and valuable improvements. When he bought the land and made the improvements he believed he owned it in fee simple. He paid taxes on the land, since the death of Margaret Myers, to the amount of fifty dollars. The improvements made by him are worth the sum of seven hundred and sixty-two dollars and fifty cents, and the rents since the death of Margaret Myers and down to the date of the judgment herein amount to the sum of eighty-seven dollars and fifty cents.

The court below rendered judgment in favor of appellants, and against Sewell for the land and costs, and ordered that no writ for the possession of the land issue in favor of appellants until payment of the sum of seven hundred and twenty-five dollars, the balance due for improvements and taxes after deducting amount due for rents, shall be made to Sewell.

1. STATUTES: Betterment act is constitutional.

The judgment of the court below is based upon *Section 2644 of Mansfield's Digest*, which says: "If any person, believing himself to be the owner, either in law or equity, under color of title, *has* peaceably improved, or shall peaceably

improve, any land which upon judicial investigation shall be decided to belong to another, the value of the improvement made as aforesaid, and the amount of all taxes which may have been paid on said land by such person, and those under whom he claims, shall be paid by the successful party to such occupant, or the person under whom or from whom he entered and holds, before the court rendering judgment in such proceeding shall cause possession to be delivered to such successful party." <span style="float:right">Improvement<br>by life-tenant.</span>

Is this statute constitutional? Similar statutes have been in force in many of the states for some time, "and have been so uniformly held constitutional that we consider ourselves bound by the great weight of authority in their favor." The following are some of the numerous cases in which such laws have been held constitutional. *Ross v. Irving, 14 Ill., 171; Whitney v. Richardson, 31 Vt., 306; Armstrong v. Jackson, 1 Blackf., 374; Fowler v. Holbert, 4 Bibb, 54; Jones v. Carter, 12 Mass., 314; Sanders v. Wilson, 19 Tex., 194; Brackett v. Norcross, 1 Greenl. 89; Hunt's lessee v. McMahon, 5 Ohio, 79; Dothage v. Stewart, 35 Mo., 251; Love v. Shortzer, 31 Cal., 487.*

But the statute of this state is different from the betterment laws of some of the states, in this; it gives to occupants the right to compensation and to hold possession of land on account of improvements made before its enactment. It is contended that it thereby divests vested rights, and requires the owner to pay for improvements, which at the time of its enactment rightfully belonged to him. Is it unconstitutional in this respect?

"Private rights," says Judge Cooley, "may be interfered with by either the legislative, executive, or judicial department of the government. The executive department, in every instance, must show authority of law for its action, and occasion does not often arise for an examination of the limits which cir-

cumscribe its powers.    The legislative department may, in some cases, constitutionally authorize interference, and in others may interpose by direct action.    .    .    .    .    But there is no rule or principle known to our system under which private property can be taken from one person and transferred to another, for the private use and benefit of such other person, whether by general law or by special enactment.    The purpose must be public, and must have reference to the needs or convenience of the public.    No reason of general public policy will be suffi- cient, it seems, to validate such transfers when they operate upon existing vested rights.

"Nevertheless, in many cases and many ways remedial leg- islation may affect the control and disposition of property, and in some cases may change the nature of rights, give remedies where none existed before, and even divest legal titles in favor of substantial equities, where the legal and equitable rights do not chance to concur in the same person.

"The chief restriction upon this class of legislation is, that vested rights must not be disturbed; but in its application as a shield of protection, the term 'vested rights' is not used in any narrow or technical sense, or as imparting a power of legal control merely, but rather as implying a vested interest which it is right and equitable that the government should recognize and protect, and of which the individual could not be deprived arbitrarily without injustice.    The right to private property is a sacred right; not, as has been justly said, 'introduced as the result of princes' edicts, concessions and charters, but it was the old fundamental law, springing from the original frame and constitution of the realm.'

"But as it is a right which rests upon equities, it has its rea- sonable limits and restrictions; it must have some regard to the general welfare and public policy; it cannot be a right which is to be examined, settled and defended on a distinct and sepa- rate consideration of the individual case, but rather on broad

and general grounds which embrace the welfare of the whole community, and which seek the equal and impartial protection of the interests of all." *Cooley's Constitutional Limitations,* *356, 357.*

Upon the principle that the legislature may interfere with private property for the purpose of adjusting "the equities of the parties as near as possible according to natural justice," the betterment laws of many states have been sustained.

In speaking of the betterment statutes of Vermont, in *Whitney v. Richardson, supra,* the court said:

"The right of the occupant to recover the value of his improvements does not depend upon the question whether the real owner has been vigilant or negligent in the assertion of his rights. It stands upon a principle of natural justice and equity, viz.: that the occupant, who, in good faith, believing himself to be the owner, had added to the permanent value of the land by his labor and his money, is in equity entitled to such added value; and that it would be unjust that the owner of the land should be enriched by acquiring the value of such improvements, without compensation to him who made them. This principle of natural justice has been very widely, we may say, universally, recognized."

"Betterment laws, then," says Judge Cooley, "recognize the existence of an equitable right, and give a remedy for its enforcement where none had existed before. It is true that they make a man pay for improvements which he has not directed to be made; but this legislation presents no feature of officious interference by the government with private property. The improvements have been made by one person in good faith, and are now to be appropriated by another. The parties cannot be placed *in statu quo,* and the statute accomplishes justice as near as the circumstances of the case will admit, when it compels the owner of the land . . . to pay the value" of the betterments "to the person at whose expense they have

been made.   The case is peculiar ; but a statute cannot be void as an unconstitutional interference with private property which adjusts the equities of the parties as near as possible, according to natural justice." *Cooley's Constitutional Limitations, p. 389.*

If the occupant, who in good faith, believing himself to be the owner, has made improvements on the lands of another, after the enactment of the statute, is in equity and justice entitled to pay for such improvements before he should be dispossessed, it is equally true that he is in equity and justice entitled to be paid for improvements he made in like good faith on lands of another, which he believed was his own, before the enactment of the statute, before he should be dispossessed.   If the constitutionality of the statute, affording relief in one case, can be sustained, upon the same principle and by the same argument, its constitutionality can be proved in the other.   In speaking of the constitutionality of the betterment laws of Massachusetts, Chief Justice Parsons said :   "The demandant has not contested the constitutionality of this statute, so far as it may affect actions sued after its passage, but denies it as affecting actions pending at that time.   We see no ground for this distinction; and if it were competent for the legislature to make these provisions, to affect actions after to be commenced, the same provisions might apply with equal authority to actions then pending." *Bacon v. Callender, 6 Mass., 308.*

There is no clause in the Constitution of this state or the United States inhibiting the legislature from enacting a statute, retrospective in its operation, like the one under consideration, allowing ejected occupants of land to recover the value of improvements made by them while in possession and before the passage of the act.   This being true the power of the legislature to enact such a law results as a necessary consequence, "for it is uncontrovertibly true, the legislature may enact any law, the passage of which is not expressly or impliedly forbid-

den by either the Constitution of this state or that of the United States." *Abber v. May, 2 Paine, 74; Fowler v. Halbert, 4 Bibb., 52; Brackett v. Norcross, 1 Greenl., 92; Bacon v. Callender, 6 Mass., 303.*

The betterment statute of this state is, therefore, constitutional, and Sewell is not precluded from its benefits because his improvements were made before its enactment.

Another question arises. The improvements were made during the lifetime of Margaret Myers, and before the life estate inherited by her determined. Is Sewell entitled to compensation, for the improvements, under the statute? As a general rule improvements made by life tenants, during the existence of the life estate, are referred to their interest in the land, and for them they would not be entitled to compensation. But it is different in this case. For a valuable consideration Camp pretended to convey to Sewell, in fee simple, by warranty deed, the land in controversy. Sewell believed that he, thereby, became the owner in fee simple. In this faith he, peaceably, made valuable and lasting improvements. Under this state of facts is he entitled to pay for the improvements? *2. Improvements by life-tenant.*

A similar question arose under a Massachusetts statute in *Plimpton v. Plimpton, 12 Cush., 458,* which says: "If the demanded premises have been actually held and possessed by the tenant in the action, and by those under whom he claims, for six years next before the commencement of the action, he shall, in case of judgment against him, be entitled to compensation in the manner hereafter provided, for the value of any buildings or improvements made or erected on the premises by himself, or by any person under whom he claims. The tenant shall also be entitled to like compensation, although the premises should not have been so held so long as six years, provided he holds them under a *title which he had reason to believe good.*" The land in controversy in that case was conveyed to the tenant by a deed, purporting to convey in fee simple. The tenant took

possession and claimed the entire interest in the land. It was, however, adjudged in that case, that he only acquired a life estate. Improvements were made during the existence and after the termination of the life estate. The case was referred to an assessor to report the value of improvements. He allowed the tenant compensation for the improvements made during and after the life estate. The demandants contended that the assessor erred in computing anything for improvements made during the existence of the life estate. Chief Justice Shaw, in delivering the opinion of the court, after finding that the tenant made the improvements under a conveyance which he had reason to believe vested the title in fee simple in him, said: "On this ground, therefore, as well as the former, we think the tenant entitled to betterments upon the principles relied on by him; and the assessor having taken the same view of the relative rights of the parties, and assessed the compensation for improvements, on these principles, his report is accepted and judgment is to be rendered for the demandants, with allowance to the tenants for betterments, in conformity with the report."

In *Wales v. Coffin, 100 Mass., 177*, the same question arose again under the same statute. Justice Hoar, delivering the opinion of the court, said: "The effect of the decision in *Plimpton v. Plimpton* is, in short, that the possession of a tenant may be so far adverse as to entitle him to compensation for betterments, although he holds a limited estate which entitles him to the possession at the same time, so that his possession does not constitute a disseisin of the tenant in remainder; if his holding is not in fact and intent under the partial and rightful title, but under a claim of the entire interest; . . . and it was decided further in *Plimpton v. Plimpton*, that the fact that the tenant had a good estate for life would not defeat the claim for betterments, if he had reason to believe that he had a title in fee;" and held accordingly.

Fee v. Cowdry, et al.

The statute of this state is more liberal than the Massachu-setts statute. Under the Massachusetts statute the occupant must hold "under a title which he has reason to believe good," before he can recover compensation for improvements. Under the statute of this state he must be a *bona fide* occupant and hold under a "color of title."

Was Sewell a *bona fide* occupant? In *Green v. Biddle, 8 Wheat., 79,* Mr. Justice Washington, in delivering the opinion of the court, said: He is one "who not only *supposes* himself to be the true proprietor of the land, but who is ignorant that his title is contested by some other person, claiming a better right to it. Most unquestionably this character cannot be maintained, for a moment, after the occupant has notice of an adverse claim, especially if that be followed up by a suit to re-cover the possession. After this, he becomes a *mala fide* possessor, and holds at his peril, and is liable to restore all the *mesne* profits, together with the land."

Sewell was a *bona fide* occupant; and unquestionably held under color of title. He did not hold under the partial and rightful title of Mrs. Myers, but under a claim of the entire in-terest; and the improvements made by him are not referable to the life estate inherited by Mrs. Myers, but to his claim of the entire interest. If he had taken nothing by his deed he would most unquestionably have been entitled, under the stat-ute, to compensation for his improvements. The failure to get what he had purchased and intended to hold and improve, and believed he had held and improved, but something else, should not defeat his right to compensation for the improvements.

The judgment of the court below is affirmed.