Caldwell, Circuit Judge,
(after stating the facts.) It is objected by the appellees that the mode of proceeding adopted by the complainants does not conform to the requirements of the occupying claimant’s law, and that the suit was brought out of time. Where a state statute creates a right and prescribes a mode of proceeding to enforce it in the state courts, the courts of the United States, in that state, will enforce the right, but not always in the mode prescribed for enforcing it in the state courts. The state courts may be authorized to enforce an equitable right by an action at law, or a legal demand by a suit in equity, or to confound the two jurisdictions in the same suit. But in the courts of the United States the distinction between legal and equitable rights and modes of proceeding must be observed. Those courts will enforce the right by the appropriate -remedy, having regard to these distinctions. The Nebraska statute does not contemplate any proceeding to establish the occupant’s claim for the improvements until after final judgment has been rendered in favor of the plaintiff in the ejectment suit. Any time after that, and while the occupant remains in possession, he may secure the benefits of the statute by applying to the court for the appointment of three appraisers, who are to assess the value of the land at the time • the occupant went into possession, and the value of the valuable and lasting improvements erected-thereon by the occupant prior to the time he received actual notice of the owner’s claim, and to take and state an account of the rents and profits of the land received by the occupant after he had notice of the owner’s title by the service of process. The title to the land is no longer in controversy. That issue has been tried to a jury. What remains to be done is to ascertain the value of the land and improvements, and take an account of the rents and profits as a basis for a. decree. If these matters are solely cognizable .at common law, then, as they exceed $20 in value, they must, under article 7 of the amendments to the constitution of the United States, be submitted to a jury. But they are not, and never were, exclusively cognizable at common law. The mode of procedure prescribed by the statute-which creates the right dispenses with a jury, and conforms very nearly to the established chancery practice. That the bill for injunction was well brought is indisputable. Whether the injunction should stand, and what decree should be rendered in the cause, depended upon the taking and stating of several accounts. The jurisdiction having attached on the injunction, the court will retain the cause, and take and state the accounts necessary to a final decree. Ober v. Gal *443 lagher, 93 U. S. 199; McMurray v. Van Gilder, 56 Iowa, 605, 9 N. W. Rep. 903. It would be no objection to the exercise of this jurisdiction if it called for adjudication upon purely legal rights, and conferred purely legal remedies, for, where the controversy is one in which a court of equity only can afford the relief prayed for, its jurisdiction is unaffected by the character of the questions involved. Preteca v. Land Grant Co., 4 U. S. App. 326, 1 C. C. A. 607, 50 Fed. Rep. 674; Holland v. Challen, 110 U. S. 15, 25, 3 Sup. Ct. Rep. 495. Courts of equity always had concurrent jurisdiction with courts of law in matters of account, where they were too complex for a jury to deal with them understandingly, or where, as in this case, the stating the account is in aid of an equity or right not adequately available at law. In the course of the proceeding, orders and decrees have to be passed, which, if not within the exclusive competency of a court of chancery, are undoubtedly within its jurisdiction. It is obvious that the flexible forms and modes of proceeding of a court of equity are much better adapted to the execution of the law than is the machinery of a common-law court. This was decided by the supreme court of the United States more than 60 years ago in a similar case. Bank v. Dudley, 2 Pet. 491. “It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.” Boyce v. Grundy, 3 Pet. 215; Oelrichs v. Spain, 15 Wall. 211, 228; Preteca v. Land Grant Co., 4 U. S. App. 326,1 C. C. A. 607, 50 Fed. Rep. 674.
The case being one of equitable cognizance, the federal court, sitting in chancery, will execute the law by the customary chancery methods and modes of proceeding, and, if they are not adequate to the purpose, will devise methods that are. The equity practice in the courts of the United States is not regulated by the state statutes. Nevertheless, in the exercise of its chancery powers, the court below might have conformed to the state practice by directing the marshal to summon three appraisers, and this probably would have been the better way, as it is desirable, when a court of the United States is enforcing a right created by state statute, to follow, as near as may be, the practice prescribed by the state statute for the enforcement of the right secured thereby. But it was equally within the discretion of the court to appoint one or more commissioners, or to refer the matter, as was done, to a master. The appellees brought their suit in apt time, (Railroad Co. v. Dobson, 17 Neb. 457, 23 N. W. Rep. 353, 511; Page v. Davis, 26 Neb. 671, 42 N. W. Rep. 875,) and in the proper forum, (Bank v. Dudley, supra.)
It is now'-too late to question the constitutionality of statutes which secure to occupying claimants compensation for their improvements. The reasoning by which they are supported as just measures of public policy, and their constitutional validity maintained, is too trite to require or justify repetition. If authority can ever silence contention, then the validity of the Nebraska statute, as the court construes it, is not open to debate. For a list of the cases, see Childs v. Shower, 18 Iowa, *444 261, 269; Fee v. Cowdry, 45 Ark. 410; 10 Amer. & Eng. Enc. Law, tit. “Improvements.” The cases cited by the learned counsel for the appellees have no application to the Nebraska statute. In Green v. Biddle, 8 Wheat. 1, an early statute of Kentucky on the subject was held to be in conflict with the terms of the compact between Virginia and Kentucky and void for that reason. Nothing was decided affecting the constitutionality of such laws. In McCoy v. Grandy, 3 Ohio St. 468, it was decided that an act which gives to the occupant the first option to take pay for his improvements, or to pay for the land and keep it, was unconstitutional. Under the Nebraska statute, the first option is given to the owner to pay for the improvements, and keep the property. And the complaint of the owner, in this case, is not that the statute does not give him the option to pay for the improvements and keep the land,—for it is conceded that the statute does give him that right,—but the complaint is that it does not also give him a further option to compel the occupant to buy the land at its appraised value, or forfeit his possession and all claim for his improvements. In his answers he says that he “ desires * * * that the said'plaintiff shall proceed according to law to have the value of said property fixed, and duly tender to this defendant the value of said property,” and that, failing so to do, he be dispossessed. In the case of Childs v. Shower, 18 Iowa, 261, a statute which authorizes a general money judgment against the owner in favor of the occupant for the value of the improvements, and a general execution to enforce its collection, was held unconstitutional; but under the Nebraska statute the value of the improvements is simply declared to be a lien on the land, and there is no provision for enforcing it, either by general or special execution. Statutes providing that the value of the improvements may be adjudged to be a lien on the land, and that the occupant may retain the possession until he has been paid the value of the improvements, are held valid everywhere. Childs v. Shower, supra; Fee v. Cowdry, supra; Claypoole v. King, 21 Kan. 612; Stephens v. Ballou, 27 Kan. 594; Pagev. Davis, 26 Neb. 671, 42 N. W. Rep. 875; Dworak v. More, 25 Neb. 741, 41 N. W. Rep. 778; Beard v. Dansby, 48 Ark. 183, 2 S. W. Rep. 701. In Arkansas the land is not valued, but only the improvements,—the value of which must be paid by the owner before he can dispossess the occupant. The value of the improvements is a lien on the land, to satisfy which the land may be sold. Mansf. Dig. Ark. c. 55, §§ 2644, 2645. This statute, though retrospective in its operation, has always been held to be constitutional. Fee v. Cowdry, supra; Beard v. Dansby, supra. And in some states the failure of the owner to pay the assessed value of the improvements upon the land within the time fixed by the statute or the order of the court operates to extinguish his right of property in the land, and vests it in the occupant. Flynn v. Lenvieux, 46 Minn. 458, 49 N. W. Rep. 238; Craig v. Dunn, 47 Minn. 59, 49 N. W. Rep. 396; Stump v. Hornback, 94 Mo. 26, 35, 6 S. W. Rep. 356.
Complaint is made of the clause of the act which provides that the land shall be valued as of the date of the occupant’s entry. It will some *445 times occur that the land was more valuable at the date of the occupant’s entry than it is at the time of trial. As applied to such cases, is the provision obligatory? And is it only to be set aside when it would advantage the owner to do so? The question comes to this: Has the owner the.exclusive right to fix the date for the valuation, and is this a right guarantied to him by the constitution of the state? We think not, and, if not, then it is a matter of practice and evidence resting in the discretion of the legislature or the courts. If the legislature does not fix the date, the courts rfiust. The courts would probably differ as to what the date should be, and for the sake of uniformity, and to silence contention, it was a wise exercise of legislative discretion to make the rule uniform. The objection that the rule will not always operate equitably, if well founded in fact, cannot affect its constitutional validity; but it is by no means certain that the rule is inequitable. It is a familiar rule that the actual possession of land is notice to the whole world of the occupant’s rights. In contemplation of law, the owner has notice of the occupant’s entry upon the land, and his right of action accrues at that time. Having this notice, he is silent, and makes no claim. His moral obligation to speak is great. In the mean time the bona fide occupant, who purchased and paid for the land, goes forward, and makes valuable improvements upon it, in the honest belief that he owns it. The owner finally breaks silence, and asserts his claim. After obtaining judgment for the land, he declines to pay the value of the improvements and keep his land, but demands of the occupant the value of the land. Is there any injustice in saying to such an owner, as this statute does in effect: “You were silent while the occupant in good faith was improving the land and adding to its value, and if you now decline to pay for the improvements, made under these conditions, you must be content to have the land valued as of the date you ought, in justice and fairness to the occupant, to have made known your claim.” This is but applying to this class of cases a principle as old as jurisprudence itself. The equity of the statute finds support in another view. It is the actual occupants of the lands of the country who lay out and open the public roads, build the schoolhouses, and erect and support churches; and it is these and such like public improvements that are the chief factors in increasing the value of the lands. As a rule, those who recover the lands from the bona fide settlers have contributed nothing towards these public improvements, and have done nothing to add to the value of the lands. As to them, the increase in value from these and such like causes is an unearned increment. But with the settlers on the lands it is otherwise. Their time and money have been expended in making and maintaining these public improvements, which, while they operate to increase the value of the lands, add nothing to the value of the improvements on the lands when they come to be valued separately from the lands. It is not very obvious, therefore, what superior equity the plaintiff has over the occupant to the increase in the value of the land, produced by the money and labor of the occupant. But the statute is impartial. It fixes as a uniform date for the valuation the date of the occupant’s entry upon the *446 land, without regard to the question whether the land was worth more or less at that time than at another. In its practical operation it may ■sometimes make for the occupant and sometimes for the owner, but it probably comes as near working out just results as any other fixed general rule that could be framed on the subject. At any rate, the legislature thought so, and that concludes discussion.
. The fact must not be overlooked that the improvements are valued as of the date when they are least valuable. The occupant is not entitled to their costs, nor to their value when new, but ónty to their value at the time of the trial, which must be measured by the benefits which the -owner will receive from them in their then condition. Story, Eq. Jur. § 799; McMurray v. Day, 70 Iowa, 671, 28 N. W. Rep. 476; Childs v. Shower, supra. While time may add to the value of the land, it is constantly deteriorating and diminishing the value of the improvements.
The state of Nebraska has legislated twice on the subject of the rights of occupying claimants. The first act was passed in 1873. That act provided that the occupant should not be thrown out of possession until he had been paid the assessed value of the improvements, unless he refused, upon demand of the owner, to pay the appraised value of the land. Gen. St. Neb. 1873, c. 51, § 1. The owner was given the option to pay the occupant the value of the improvements or to sell the land to the occupant at its appraised value at the date of the judgment; and, if he elected to sell, and the occupant declined to pay for the land within the time fixed by the court, he forfeited his possession .and his improvements. Id. § 819. In practice it was found this act .afforded small protection to many occupants. As a rule, the settlers who improved the lands were not opulent. They were most commonly poor men, who invested all their means in the first purchase of their lands and in improving them, and when their titles failed they were without the means to purchase the lands a second time. This was the plight of most, of the occupants who stood in need of the protection afforded by an occupying claimant’s law, but under this act there was no protection-for them, unless they had money enough to buy the land a second time, and at its increased value. This they did not have, and as .a result of their poverty the act confiscated the improvements to the use •of the successful plaintiff in the ejectment suit. This was the state of the law when the act of February 23, 1883, was passed. That act was -obviously passed for the purpose of affording to the occupant a larger measure of protection than he enjoyed under the act of 1873. This was ■effected by amending the statute in several important particulars. Un■der the act of 1873 the land was valued as of the date of the judgment. By the amendment of 1883 it is valued as of the date of the occupant’s •entry. Cobbey, Consol. St. Neb. 1891, c. 47, § 4383. The first act provided there should be a judgment in favor of the occupant for the value of the improvements without defining its nature or effect. By the last act this judgment is termed a “decree,” and it is declared “such decree shall constitute and be a lien on said real estate.” Id. § 4385. JBy the first act, if the occupant failed to pay the value of the land upon *447 the owner’s election to convey, he was dispossessed, and lost his improvements. By the last act, if the occupant declines to purchase the land when a conveyance is tendered by the owner, the occupant still has the right of possession, and cannot be dispossessed until the owner deposits with the clerk of the court the value of the improvements. Id. § 4388. By the act of 1883 it is provided that “the occupant or claimant shall in no case be evicted from the possession, or deprived of his right in the premises, except as provided in the two preceding sections. * * *” Id. § 4389. The two preceding sections are sections 4387 and 4388. The first provides that, if the owner elects to pay the value of the improvements, and does so, a writ of possession shall be issued in his favor; and the second that, if the owner elects to sell, and the occupant declines to buy, then the owner must deposit the value of the improvements with the clerk of the court before he can have a writ of possession. The actas it appears in the general statutes still contains a clause which, taken by itself, would indicate a different policy. Its presence in the statute will now be"explained. The act is a long one. In amending it the old act was copied in the main, the amendments being effected by striking out short sentences here and there in the sections and inserting others in their place; thus making the changes we have indicated. The last clause of the first section of the act (section 4380) contains an implication to the effect that, unless the occupant pays the value of the land upon demand of the owner, he must be turned out of possession. This clause was in the original act, and was proper enough there, and in harmony with the other provisions and the policy of that act; but it is now plainly in conflict with the subsequent sections of the act as amended in 1883, and with the obvious policy and purpose of those amendments, and was superseded by them.
Briefly, then, the legal effect of the amended act is to give the occupant a lien on the land for the value of the improvements, and the possession of the land until the improvements are paid for. He does not forfeit his right of possession, or his right to receive pay for his improvements, by declining to accept the owner’s offer to sell the land, as was the case under the act of 1873. Nor does the owner forfeit his land by failing to pay for the improvements. The amended act was designed to relieve the occupant from a forfeiture of his improvements upon his failure to pay for the land, and not to impose on the owner a forfeiture of his land upon his failure to pay for the improvements. The odious feature which forfeited the interest of one party in the property, if he was unable or unwilling to pay for the interest of the other, is eliminated from the statute. Their rights are reciprocal in the respect that they are nonforfeitable. The owner of the land has the election to pay the appraised value of the improvements and take the property. If he declines to do this within such time as the court shall direct, then the occupant, upon paying into court the appraised value of the land, is entitled to a decree vesting the title in him. Id. § 4389. Beyond this the statute in terms does not go. It makes no provision as to what shall be done when the owner declines to pay the appraised value of the im *448 provements, and the occupant declines to pay the appraised value of the land. Where this is the case, a court of chancery will not decree that either party thereby forfeits his rights. Equity abhors penalties and forfeitures, and will enforce the rights of parties by more rational and equitable methods. A court of chancery may be compelled to enforce a hard bargain, but never makes one itself. Equality is equity, and, in the absence of a statute expressly giving priority to a decree for the value of the land over a decree for the value of the improvements, equity will treat the parties as having rights' in the property in proportion to the value of the lands and improvements respectively, and will divide the property, or the fund derived from its sale, accordingly.
The occupying claimant’s law of Iowa, which has been in force for more than 40 years, makes the occupant and owner, if neither pays the other, tenants in common in proportion to the value of their respective interests. Referring to this provision of the statute, the supreme court of that state says: “And. we think the provision of the act of 1851, making the parties, if neither paid the other, tenants in common, a most equitable way of adjusting the respective rights of the innocent owner of the property and the bona fide improver of the same.” Childs v. Shower, supra. We agree with that court that the rule mentioned is an equitable and just method of adjusting the rights of the owner and occupant in such cases. Although what are usually termed “equitable considerations” may have induced the legislature to enact the statute securing to the occupant the right to pay for his improvements, the right, when once established under the statute, becomes an absolute, vested, legal right, of equal dignity with the right of the owner to be paid the appraised value of the land. Flynn v. Lemieux, 46 Minn. 458, 49 N. W. Rep. 238; Craig v. Dunn, 47 Minn. 59, 49 N. W. Rep. 396. Neither is entitled to preference over the other. The statute makes none, and the courts should not arbitrarily discriminate. As was said by the supreme court of Arkansas in reference to the occupying claimant’s law of that state: “It is a rule for administering justice, and the principle of it is that no one ought to be enriched at the expense of another.” Beard v. Dansby, 48 Ark. 183, 2 S. W. Rep. 701.
The supreme court of Kansas, in a general discussion of the occupying claimant’s law of that state, holds that, if the owner elects to take the value of the land, and tenders a deed, thereupon “the land, in law and equity, becomes the property of the” occupant, “and all the plaintiff is then entitled to is the value of the land.” And the court adds:
“In just what way he may recover that value the statute, as it now stands, does not prescribe. * * * Under the statute before it was amended in 1873, if the defendant did not pay the value of the land to the plaintiff within a reasonable time,—to be fixed by the court,—the plaintiff might then have his writ of eviction to obtain possession of the land; but under the law as it now stands he is not entitled to any such writ. Under the law as it now stands the plaintiff would probably be entitled to commence an independent action to subject the land with the improvement to the payment of his claim, and to sell his land with the improvements for that purpose, for undoubtedly his claim is a lien, and a prior lien, upon the land. It is possible, however, *449 that the plaintiff may have some other remedy. It is not necessary, however, in this ease, to determine what the plaintiffs’ remedy, or their best remedy, is. * * *” Stephens v. Ballou, 27 Kan. 594.
The priority of lien in favor of the owner for the value of the land under the Kansas statute, it would seem, if it exists at all, is obtained by making the occupant an involuntary purchaser of the land, and compelling the owner to foreclose as upon a vendor’s lien. We do not think this rule is applicable to the Nebraska statute. The spirit of that statute is what the letter of the statute is in Iowa; and where the owner does not pay for the improvements, and the occupant does not pay for the land, they should be regarded, in effect, as tenants in common in proportion to the value of their respective interests, with the sole right of possession in the occupant so long as the joint tenancy continues. How is this condition of things to be terminated ? In a court of chancery the solution of this question is not difficult. The court, upon the motion of either the owner or the occupant, will decree the sale of the property, and distribute the proceeds of the sale to the parties in proportion to their respective interests. We agree with the views expressed in the brief of the learned counsel for the appellees, that equity, having obtained jurisdiction, will retain it, to do complete justice, and finally settle the rights of the parties, and that to that end the court may decree a sale of the property and the distribution of the proceeds according to the rights of the parties.
We have sought to follow the view of the supreme court of the state of Nebraska in its interpretation of this statute as far as it has been called upon to construe it. We recognize the fact that the judicial department of every government is the rightful exponent of its laws, and especially its supreme law; and, should the supreme court of Nebraska hereafter put a different construction on this statute, this court will thereafter conform to that interpretation.
The decree of the court below is reversed, and the cause remanded, with instructions to the court to enter a decree confirming the master’s report, and declaring that the value of the land at the date of the complainants’ entry thereon was $1,300; that the value of the lasting and valuable improvements put upon the land by the complainants prior to receiving actual notice of the adverse claim of the defendant, after deducting therefrom the net annual value of the rents and profits of the lands received by the complainants after having received notice of defendant’s title by service of process, is'$10,180; that said sum constitutes a lien on the land, and that the complainants are entitled to retain the possession of the land until said sum is paid, or the land is sold as provided by the decree; that, the defendant has the option to pay the value of the improvements at any time within 90 days after the entry of the decree, and upon the payment thereof into the registry of the court all right and claim of the complainants to the possession of the land and the improvements thereon shall be thereby extinguished, and the defendant shall immediately be let into the possession of said property; that, if said defendant shall decline to exercise his option to pay for the im *450 provements and take-the property, the complainants shall, for 90 days after the expiration of the defendant’s option, have the option to pay the appraised value of the land, and upon the payment thereof into the registry of the court the defendant shall execute and deliver to the complainants, or deposit in the clerk’s office for them, a deed for said land, and, failing so ,to do, the decree shall operate to vest the legal title to-said lands in the complainants; that, if the defendant declines to exercise his option to pay the value of the improvements and take the property within the time specified, and the complainants decline to exercise-their option to pay the value of the land within the time specified, then, upon the motion of either the said defendant or the complainants, the court will direct said land, with the improvements thereon, to be sold by the master, after giving the usual notice, to the highest bidder for cash in hand. The master shall make the purchaser a deed for the property, which shall have the effect to vest in the purchaser all the right, title, estate, and interest of the said defendant and the complainants in said land and the improvements thereon, and said purchaser shall be let into-the possession of the same. After paying costs of thé suit, the remaining proceeds of the sale of said land and improvements shall be paid to the complainants and the defendants in the proportion that the value-of the improvements bears to the value of the land.