PAUL SCHIMPF V. LINA RHODEWALD ET AL.

FILED JUNE 5, 1901.   No. 9,777.

Commissioner's opinion, Department No. 3.

1. Construction of Will: GERMAN LANGUAGE: LIFE ESTATE. A will consisting of a single sentence in the German language of which the following is, as nearly as possible, a literal translation into English, omitting names, "I do will and bequeath to my wife all my property, she has entire control (sie habt zu verfuegen) over the same after my death as long as she lives," devises a life estate only and the reversion, at the death of the testator, vests in his heir or heirs at law.

2. Devise by Life Tenant: FEE: EQUITABLE LIEN. A will by a tenant for life only, which purports to devise the fee of the lands which are the subject of the tenancy, does not operate as a bequest of an equitable lien upon the reversion in behalf of the testator because of his having paid off an incumbrance upon the premises existing at or prior to the creation of the life estate.

3. Life Tenant: BETTERMENTS: REVERSION: OCCUPYING CLAIMANT. Ordinarily, a life tenant who makes betterments upon the estate is not entitled to be reimbursed for the same by the reversioners or out of the reversion, but in case he should be so entitled, his right will not pass by his will purporting to devise the lands in fee, and the "Occupying Claimant's Act" will not, in such case, be available to the devisee with respect to betterments made before the termination of the life estate.

4. Action in Partition: DEFENDANT IN POSSESSION: WAIVER. When, in an action for a partition of lands, the defendant in possession claims title to the premises adversely to the plaintiff, he will, by waiving a jury and participating without objection in the trial of all the issues in the cause before the court alone, also waive any objection he might otherwise have had on account of irregularity in the procedure in this respect.

ERROR from the district court for Richardson county. Tried below before STULL, J. *Affirmed.*

*Jefferson H. Broady, J. R. Wilhite* and *C. Gillespie,* for plaintiff in error.

*Edwin Falloon, amicus curiæ.*

*Francis Martin, T. E. Martin* and *Reavis & Reavis, contra.*

Ames, C.

In February 1878, Christian Ertman Schimpf, a resident of Richardson county in this state, died leaving an estate consisting of one hundred and sixty acres of land lying in that county, and certain live stock and farming utensils situate thereon and belonging thereto. He left surviving him his widow and eight children, his heirs at law, of whom the plaintiff in error herein, Paul Schimpf, then about nineteen years of age, was the only son. The father was German born and previous to his death he had executed a will written by himself and in the German language. Shortly afterwards the will was duly admitted to probate in the county of his residence. The widow, the son and one of the daughters continued to reside upon the land after the death of the father, the daughter until the time of her marriage, the widow until her death in 1895, and the son until now. The widow and son until the death of the former, and the latter since that event, have managed and controlled the property, personal and real, as their own, receiving to their own use the produce, rents and profits and increase of the same, and out of the same have expended considerable sums in buildings and betterments upon the lands, and in 1878, in paying, and causing to be satisfied of record, a mortgage executed thereon by the father. In 1895 the widow died, after executing a will purporting to devise the fee in the land to her son. In the meantime, Paul bought from some of his co-heirs, and obtained from them conveyances of, whatever title or interest they had in the premises. In 1897 this action was begun by the remaining heirs at law of the father, to determine their shares in the land and obtain partition thereof.

The principal contention in this action concerns the interpretation of the will of the father. A transcript of this instrument, in German, is set out in the answer of Paul and is admitted by the reply to be correct. At the time it was admitted to probate, the probate judge made

and spread upon the records of his office a purported translation of it, as follows:

"ARAGO, Feb. 1st, 1873.

"I, Christian Ertman Schimpf, do will and bequeath to my wife, Frederike Schimpf, all my property. She has entire control over the same after my death as long as she lives. That is my will. In testimony whereof I have hereunto set my hand."

The chief controversy in the briefs and arguments of counsel is over the meaning of the word "verfuegen," rendered in the above translation "entire control." With that exception, it is not disputed that the English words in the copy are the equivalents of the corresponding German words in the original. But it is admitted that the translation by the probate judge was not an official act and that the copy has no judicial importance.

Judging from the transcript contained in the answer, the document was written without punctuation except commas. The witnesses who attempt a translation of the entire instrument indulge in some freedom both as to breaking it up into two distinct sentences and as to the transposition of words. One Kaiser, a witness for the defense, inserts a period, as does the probate judge, after the word "property." Jessen, another witness for the defense, renders the will thus:

"I Christian Ertman Schimpf will to my wife Frederike Schimpf all my property after my death as long as she lives. She will have the disposition."

Keller, a witness for the plaintiff, renders the will in a single sentence as follows:

"I, Christian Ertman Schimpf, make my wife, Frederike Schimpf, all my property after my death as long as she lives has she thereof disposition."

Tanner, a witness for the defense, translates as follows:

"I will to my wife, Frederike Schimpf all my property after my death as long as she lives. She shall have the disposition of said property."

According to Burchard, a witness for the plaintiff, an almost literal translation is:

"I bequeath to my wife, Frederike Schimpf all my property for her use after my death during her lifetime she shall have control thereof" or "disposition thereof."

These witnesses are all shown to be more or less expert in the German language, and there are also in the record two dictionary definitions of the word "verfuegen," in some of its forms, by which the words order, arrange, ordain, decree, provide, dispose of, command, enact, etc., are given as among its nearest English synonyms. It does not seem to me that much light can be derived from the dictionary except that the variety of definitions makes it evident that the meaning of the word in any given composition depends largely upon the subject matter and the context, nor does it seem to me that there is any important difference between the various translations made by the witnesses. Neither does it seem to me that the provision of our statute that "every devise of land in any will hereafter made shall be construed to convey all of the estate of the devisor therein which he could lawfully devise unless it shall clearly appear by the will that the devisor intended to convey a less estate," has any applicability to the instrument in question.

In order to make the statute seem applicable, it is necessary to divide into two parts that which is organically one. It is contended that the part of the instrument preceding the words "that is my will," should be divided into two sentences or clauses, and that the first clause or sentence, "I do will and bequeath to my wife all my property," is sufficient of itself to vest her with the entire estate in fee and that the following words, constituting as it is contended the second clause or sentence, "she has entire control over same after my death as long as she lives," are either insufficient to limit the preceding devise to a life estate or else are repugnant thereto and void. Or, at least, it is said, the two clauses are in such

conflict and contradiction as to raise a doubt as to whether the testator did not intend to convey the fee, and since it does not "clearly appear" to the contrary, the doubt must be resolved in favor of the widow and her devisee. But is this not creating a doubt by construction where none is suggested by the language of the testator, in order to afford an opportunity for the use of the statu, tory resolvent?

Suppose we omit the interpolated period in the probate judge's translation and substitute the words "to have" for the words "she has." The instrument would then read, "I do will and bequeath to my wife all my property to have entire control over same after my death as long as she lives." Would this change in phraseology make any difference in the meaning of the document? I think not. To my mind, the words "she has," not only in this translation, but in all those given by the witnesses, as disclosed by the record, have the precise force of the English infinitive "to have." "She has," says the German; "She to have," say we, and then it occurs to us that the pronoun is redundant and unnecessary and we strike it out. Whoever has talked much with English-speaking Germans has had abundant opportunity to observe that in translating their ideas into English they as frequently as otherwise express the infinitive by the present posses- sive. In legal parlance we say "to have and to hold dur- ing her natural life." The German says "she has to con- trol" (sie habt zu verfuegen) as long as she lives." The difference in meaning between the two phrases, if any there be, is an imperceptible shade. There is but one clause, but one complete sentence in the granting part of the will. The words following "property" are not words of limitation, and were not intended by the tes- tator to enlarge or diminish an estate previously granted, but are words of definition pertaining to the grant itself and particularly describing the estate intended to be con- veyed. The exact force or meaning or the true transla- tion of the word "verfuegen" is not a matter of extreme

importance. Whatever control, dominion or power of disposal accompanied the estate which the will conveyed terminated with it, and the duration of that estate was, by express terms of the instrument, that of the life of the devisee. It is true that 'if this word had been omitted, the estate conveyed would have been a freehold and that the devisee would, during its existence, have had entire control, disposal, order, arrangement, command, avails and dominion over and concerning the same; but the fact that that which the law implies was unnecessarily expressed in the writing of his will by an unlearned German, unfamiliar with our language, is insufficient to enlarge what would otherwise have been a life estate into a fee.

It is to be observed that the witnesses Tanner and Burchard, who are at least as expert in the German language as any others sworn, translate the will as conveying "to my wife all my property after my death so long as she lives" or "during her lifetime," and that the witness Keller translates it with but little transposition and as a single sentence, conforming in this last respect to the German transcript in the record.

The will construed in *Little v. Giles*, 25 Nebr., 313, is so unlike that now under discussion that the decision in that case affords no guidance for the present inquiry. The will there construed gave to the widow the entire estate of the testator, "the same to remain hers, with full power, right, and authority to dispose of the same as to her shall seem most meet and proper, so long as she shall remain my widow, upon the express condition, however, that if she should marry again, then it is my will that all of my estate herein bequeathed, or whatever may remain, shall go to my surviving children," etc. Here are two distinct clauses: first, an absolute devise with expressed and unlimited power of disposition, coupled with an equally express and emphatic condition subsequent, and a devise over of so much of the property as should remain—that is, the undisposed of residue of the

property at the termination of the qualified life estate. This court did not definitely or distinctly decide whether the widow took the whole estate in fee and the devise over was void, or whether she took a life estate only, with power to sell and convey the fee and the devise over was valid and effective upon the undisposed of residue, if any, at the date of her marriage. The construction of the same instrument in *Roberts v. Lewis,* 153 U. S., 367, which professes to interpret and follow the opinion of this court in *Little v. Giles, supra,* takes the latter view of the question, saying that the testator "clearly manifests his intention to restrict the estate given to the children to whatever has not been disposed of by the widow." That court evidently adhered to the opinion, which this court did not explicitly repudiate, that the widow took a life estate only, and that neither the unlimited power of disposition enlarged the estate into a fee nor was the devise over, void for repugnancy. But the question was not involved in either litigation. Conveyances executed by the devisee during her widowhood were alone in the controversy, and it was held that during that time she had power to convey the fee. This sufficed for the disposition of the suits, and that this was all that this court definitely decided, is apparent from the syllabi in *Little v. Giles, supra,* which were prepared by the same hand that wrote the opinion in that case.

At and before the date of the death of the father, there was a mortgage on the land in question, which the widow paid off and caused to be discharged of record in 1878, when it amounted, together with accumulated interest, to something above a thousand dollars. It is contended by the plaintiff in error that if the widow took only a life estate by the will of her husband, she was entitled to have the amount thus paid refunded to her by the heirs and charged as a lien upon the reversion, and that this right passed to the plaintiff in error under his mother's will and the district court erred in omitting to adjudicate the matter in the pending suit. It is unneces-

sary to decide as to the validity of the claim, or whether the widow was subrogated to the lien of the mortgage, or what rights, if any, accrued by reason of the transaction to her estate, or her personal representatives as such upon her death. Such a lien, if it exists, is an asset in the hands of an executor or administrator to be enforced against the entire reversion and reversioners alike. Its validity, or, if valid, the right to enforce it, would not be barred or in any way affected by a partition of the lands among the reversioners. A controversy concerning it would be in no way relevant to any issue properly joined in a partition suit. The executor of the will of the mother is not, as such, made a party to this action, nor does the plaintiff, who is such executor, make in his answer any claim in that capacity. He avers in his answer that by the terms of his mother's will he succeeded to her alleged right of subrogation to the mortgage debt and that he is entitled to have it adjudged and paid to him in his individual and not in his official capacity. This claim is without foundation. The mother died in May, 1895, leaving a will executed in July, 1894, in which the plaintiff in error is named as beneficiary, only as devisee of the lands in controversy and a certain other forty-acre tract. It goes without saying that an attempted devise of lands to which the testator has no title can not operate as a bequest of a chose in action, by way of an equitable lien in behalf of the testator upon the same lands. There is no evidence that the mother supposed she had such a lien, but if she did suppose so, there is no evidence of any intent on her part to make a specific bequest of it to the plaintiff in error or to any other person, and she named no residuary legatee. If she had such a lien it is the duty of her executor to enforce it as in case of any other chose in action and to account for and distribute the proceeds as in other cases.

The plaintiff in error makes a further claim under what is commonly known as the "Occupying Claimant's Act." What has been said with reference to the forego-

ing claim to subrogation on account of the payment of the mortgage has equal application to this demand. Whatever right the widow may have had to compensation for betterments upon the premises, such right did not pass to the plaintiff in error under her will. If it survived her, it accrued upon her death to her personal representatives as such. This statute protects any person for the value of any lasting and valuable improvements made by him upon lands to which he claims title and to which he "can show a plain and connected title in law or equity derived from the records of some public office or from the United States or from this state, or derived from any such person by devise, descent, deed, contract or bond, such person claiming or holding as aforesaid," etc. The betterments in question are alleged to have been made by the mother in her lifetime out of her own means, the plaintiff in error assisting therein as her employee. The mother, whose will was executed in July, 1894, did not die until May, 1895. Until the day of her death her will was ineffectual and might have been revoked. Until that day the plaintiff in error did not become and could not have become a claimant of the lands in controversy, and since then no betterments have been made. The plaintiff in error can, therefore, make no claim for benefits in his own behalf, and, as already said, whatever claim the widow may have had in the premises either terminated with her life or passed to her personal representative. It is not requisite now to decide whether there was or is any such claim, but it would, perhaps, be somewhat startling to the profession if the court should hold that the "plain and connected title" mentioned in the statute includes a title which does not purport to convey any estate in the lands to the claimant and is insufficient to amount to a "color of title." If a tenant for life by "claiming," not even in good faith, to own the reversion or remainder may make betterments upon the lands and charge the value thereof upon the estate in reversion or remainder, there appears to be no reason

12

why a tenant for years or from year to year, or even from month to month, or at will, may not make a like "claim," and under its cover expend such sums as he sees fit for buildings and improvements on the demised premises and then retain possession until he is reimbursed his outlays by his lessor. There remains to be considered a question of practice. The action was begun to obtain a partition of lands in dispute by the plaintiffs claiming as coparceners therein as the heirs at law of Christian Ertman Schimpf, and against the defendant, who was alleged to be entitled to parts of the land by like title. The petition also recited the execution and probate of the will of the common ancestor conveying a life estate in the lands to his widow, and the termination of that estate by the death of the devisee. The answer of Paul Schimpf, plaintiff in error herein, admits substantially all the allegations of fact contained in the petition, except that it denies that the will of the father conveyed to his widow a life estate only, but alleges that it devised the lands to her in fee and that she remained in open, notorious possession of them claiming title thereto until her death, and that since her death such possession and claim has been maintained by the defendant in his own right, asserting title under both the will of his father and that of his mother, and further setting up his claim to the right of subrogation to the mortgage lien and to protection under the "Occupying Claimant's Act." Issue was taken by reply to the material allegations of the answer and the court ordered that the question of title be first tried as in an action of ejectment. Afterwards, the cause coming on for trial, a jury was waived by the parties, and the court proceeded without objection to try both the issue of adverse title and of the right of partition at one time. This course seems to have been approved by this court in several cases. *Seymour v. Ricketts,* 21 Nebr., 240; *Phillips v. Dorris,* 56 Nebr., 293. If there was any irregularity in the proceedings it was waived by the plaintiff in error by waiving a jury. The trial being to the court

alone, it would have been somewhat absurd to require him to traverse substantially the same ground twice, as upon the trial of an action in ejectment, and again to determine the right of partition. The trial having taken place in the absence of a jury, errors in rulings as to the admission of evidence will not be considered by this court. At the conclusion of the trial, the court found all the allegations of the plaintiff's petition to be true, rejected the claim of the defendant below to subrogation to the mortgage lien and to protection under the "Occupying Claimant's Act," determined the aliquot parts to which the several parties were entitled in the lands in dispute and adjudged that the plaintiffs were to have partition thereof. The defendant filed a motion for a new trial and brought the case here by petition in error. In my opinion, no error in the proceedings is disclosed by the record and the findings and judgment are supported by the evidence and the law and ought to be affirmed; but since proceedings in partition were suspended upon bringing the action on error to this court, the case should be remanded to the district court for further proceedings not inconsistent herewith.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed and the cause remanded for further proceedings not inconsistent herewith.

JUDGMENT ACCORDINGLY.