JOHN FLANAGAN ET AL., APPELLANTS, V. JOHN MATHISEN ET AL., APPELLEES.

FILED FEBRUARY 21, 1907. No. 14,668.

1. **Occupying Claimant's Act: VALIDITY: CONSTRUCTION.** The so-called "Occupying Claimant's Act" (laws 1883, ch. 59), affording protection to persons not in the possession of disputed lands who have paid taxes and made lasting improvements thereon in good faith, claiming title to the same, and having an apparent title thereto derived connectedly by the public records from the United States or this state, is valid, and is applicable to lands of which adverse claimants had actual title at the time of its enactment.

2. ———: IMPROVEMENTS: INVALID MUNICIPAL ASSESSMENT. The right, under the foregoing statute, to compensation for lasting and valuable improvements is not affected by the fact that such improvements were made in supposed compliance with a municipal regulation which was void.

3. ———: ———: ———. The owner of the real title to lands upon which improvements have been made, for which a claimant is entitled to reimbursement in a proceeding under the statute, cannot be compelled to convey the same to such claimant upon being paid or tendered the value thereof as appraised in such proceeding.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed as modified.*

*B. E. B. Kennedy* and *C. W. Haller,* for appellants.

*Myers & Ten Eyck* and *Edgar Ferneau, contra.*

AMES, C.

Appellees and their predecessors in title are shown by the records of the office of the register of deeds of Douglas county to be, or to have been, the possessors by "a plain and connected title" from the government of the United States of certain lots in the city of Omaha which are the subject of this litigation. In 1876 title to these lots ripened in one John Flanagan by adverse possession that began in 1866. In 1900 Flanagan began, and he thereafter prosecuted to a successful conclusion, an action against the then apparent record owner, one Belinda M. Engles, to quiet title in the lots in himself. The defendant in that suit had purchased, and become the record owner of, the property in 1889, and thereafter down to the beginning of the action was without knowledge or notice of the adverse claim or possession, and in good faith, believing the title to be in herself, paid the annually accruing general taxes and special assessments thereon. When the action terminated in favor of Flanagan, this proceeding was begun under the occupying claimant's statute to recover the amount of such payments, and resulted in a judgment therefor, from which this appeal is prosecuted.

The statute under which the proceeding is had was enacted in 1883. Prior to that time there was no law enabling an unsuccessful litigant, who was not in the possession of the subject of the suit, to recover for taxes paid or betterments made upon the land in controversy. Some seven years before this statute was passed, Flanagan's adverse possession had ripened into a perfect title, and the appellants contend that it was not competent for the legislature to enact that his title, or that of other persons similarly situated, should be incumbered or affected by any payments made by persons claiming in hostility there-

to without his knowledge or concurrence, although the same should be for the discharge of tax liens or the betterment of his estate. In other words, that the statute, in so far as it contemplates lands, the title of the claimants to which had been extinguished prior to its passage, is unconstitutional and void. But at all times since 1867 there has been statutory enactment in this state for the relief of occupants of lands by whom betterments have been made in good faith, and in honest reliance upon an apparent or purported record title continuous from one of the sources of all titles, the government of the United States or of this state. Similar statutes are and have been for many years in force in all or most of the states of the Union, and, as was said by Judge Caldwell in *Leighton v. Young*, 52 Fed. 439, 18 L. R. A. 266, if judicial authority can ever silence contention, their validity is no longer open to question. The act of 1883 is the last of a continuous series of such statutes in this state, and differs from its predecessors, principally, in the feature which includes within its protection persons not in possession, as well as occupants, of disputed lands. Now, it is to be observed that whether as to the one or as to the other class of claimants, or whether under the former statutes or the latter, it is not the fact of occupancy alone, nor the fact of expenditures alone, nor both together, that entitles the claimant to relief, but it is the making of the latter for the benefit of the estate upon the faith of an apparent or presumptive record title. We are unable, therefore, to discover any distinction in principle between the act of 1883 and those statutes which confine their protection to persons in possession or occupancy.

Among the items allowed in behalf of the appellees is one for the payment of an alleged local assessment for street improvements made at the instance of the city. Counsel agree that this assessment, on account of irregularities and defects of procedure, was unenforceable as a legal charge or lien in behalf of the public, but it is not

disputed that the improvements were in fact made, or that the appellees made the payment, or that the amount paid is not in excess of their value.   Under such circumstances we do not see that regularity or validity of procedure by the city is material.   Doubtless appellees, with the consent of the city authorities, might have voluntarily expended the same amount for the same betterments without any such procedure, and doubtless in such case they would, upon failure of their title, have been entitled to reimbursement under the statute.

Appraisers were appointed who appraised the lots in controversy at $800, and a referee appointed by the court, with the consent of the parties, ascertained the amount of taxes and special assessments paid by appellees, together with interest, for which they were entitled to reimbursement, to be $1,839.97.   The decree provides, in substance, that for the term of 60 days from the date of its rendition appellants shall have an option to pay into court the amount of such taxes and assessments for the benefit of appellees, and that upon such payment being made the claim of the latter therefor shall be discharged and title quieted in the appellants, but that, if the appellants fail to make such payment within the interval mentioned, then the appellees shall have an option, for the term of 60 days from the expiration of that time, to pay to the clerk of the court, for the use and benefit of the appellants, the appraised value of the land, and that in that event appellants shall convey the land to the appellees or, in default of their so doing, such payment shall operate as such conveyance and vest the appellees with title to the land.   It is further decreed that, if this last mentioned payment shall not be made within the prescribed time, the property shall be sold and the proceeds of the sale distributed among the parties in proportion to their respective interests.   This decree is in substantial conformity with that directed by the United States court of appeals for this circuit, in *Leighton v. Young, supra.*   But the judgment in that case was, in the respect about to be

mentioned, in excess of the prayer of the bill, and, in our opinion, erroneous. We are unable to find in the statute any warrant or authority for the second of the above mentioned so-called "options," nor are we aware of any principle of constitutional construction by which such a statute could be upheld if enacted.

At and before the time of the beginning of this litigation, and before the appellees had made any of the expenditures for which they claim reimbursement in this proceeding, John Flanagan, one of the appellants, and the grantor of the others of them, was the owner of the unqualified fee title of the lots in suit, and he or his successors in interest remain such to this day, except for the fact that because of circumstances above narrated the property has become incumbered by a lien. That the property may be sold by judicial decree and the proceeds of the sale distributed for the satisfaction of the lien, in the manner provided by statute, is one matter; but that the owner of an estate in fee of lands can be forcibly divested of his title for any purpose, other than a public use, upon being paid or tendered such sum as some third person or some public board or officer shall arbitrarily fix or prescribe, is quite another matter. It is elementary in this country, and has been so for a century, that the constitutional guaranty against the taking of private property for public use without just compensation is an implied prohibition of the taking of such property for private use at all. It cannot be necessary to cite judicial authority for so undisputed and indisputable a proposition. The confusion of the judicial mind, manifested by the decrees in this case and in that cited, evidently arose out of the obscurity of the phraseology of section 9 of the statute. That section as originally written contemplated a situation in which one out of possession successfully asserted title against an occupant of the premises, and the difficulty arises from the language of the revision in 1883, in which the word "claimant" is used ambiguously. See sec. 9, ch. 51, Gen. St. 1873. The section as it now stands would, at the date

of the rendition of the judgment, have been properly applied to the case at bar by the following statement:    If Flanagan shall elect to receive $800, the appraised value of his land, and shall tender Engles a general warranty deed therefor, and Engles shall neglect or refuse to pay the sum named and accept the deed, then Flanagan shall deposit with the clerk of the court the amount of the appraised value of the improvements and become entitled to a decree quieting his possession of the land.    But, as Judge Caldwell points out in *Leighton v. Young, supra,* "beyond this the statute in terms does not go.    It makes no provision as to what shall be done when the owner declines to pay the appraised value of the improvements, and the occupant (or unsuccessful claimant) declines to pay the appraised value of the land."    In such a case there is a deadlock, from which the statute affords no escape and a necessity arises for the interposition of the equitable powers of the court, which is accomplished by treating the parties as tenants in common of indivisible real estate, and directing the property to be sold and the proceeds distributed in proportion to the several interests or shares. But this very procedure, by principle and by analogy to the practice in partition, from which it is borrowed, negatives the idea that the own~·r of the fee can be compelled to .surrender .his title or interest upon being paid or tendered its appraised value.

It is therefore recommended that the decree of the district court be so modified as to omit all provisions requiring appellants to convey the lots in controversy to the appellees under any circumstances, and as so modified it be affirmed.

OLDHAM and EPPERSON, CC., concur.

By the Court:  For the reasons stated in the foregoing opinion, the decree of the district court is so modified as to omit all provisions requiring appellants to convey the

30

lots in controversy to the appellees under any circumstances, and as so modified is affirmed.

AFFIRMED AS MODIFIED.