FAY E. WILLIAMS, APPELLANT, V. VINCENT BECKMARK,
APPELLEE.

21 N. W. 2d 745

FILED FEBRUARY 21, 1946.   No. 32006.

*Mothersead & Wright* and *Paul Rhodes,* for appellant.

*Auburn H. Atkins,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is an ejectment action.   The defendant denied generally the allegations of the petition and alleged further, if the prayer of plaintiff's petition should be granted, that he was entitled to the benefit of the Occupying Claimants Act.   The trial court entered an order ejecting the defendant from the premises and fixing the damages for the wrongful possession at $191.66.   The trial court further found that defendant had placed lasting and valuable im-

provements on the premises and was entitled to the benefit and protection of the Occupying Claimants Act. The plaintiff appeals from that part of the judgment granting relief under the latter act. The defendant cross-appeals from that part of the judgment ejecting him from the premises.

The evidence shows that on December 6, 1943, the property in question was sold at a referee's sale growing out of a partition suit. One Victor Anderson was the high bidder with a bid of $2,025. It appears that Anderson made the bid on behalf of Fay E. Williams, the attorney for the plaintiff in the partition suit, and that Williams paid the amount of the bid to the referee. Subsequently, Anderson conveyed his interest to Williams by quitclaim deed. On the day of the sale Williams informed Lawrence A. Fricke, the referee, that if any of the bidders at the sale wanted to take the property at the amount Anderson bid it in, they could have it by complying with the terms of the sale. Later in the same day, Williams directed a letter to Fricke with reference to the transaction, in which he said in part: "If I have to go through with the deal, I will want you to sell the property at the first opportunity for enough to return to me my investment, and your commission for selling it." On January 8, 1944, Fricke sold the property to Vincent Beckmark, the defendant, for $2,500 and agreed to give a warranty deed and to furnish an abstract showing good title. Defendant gave Fricke a check for $1,000 which was cashed by Fricke on March 23, 1944. Defendant took possession on March 5, 1944, at the direction of Fricke and proceeded immediately to make extensive alterations and repairs to the house located on the premises.

It is the contention of the defendant that a valid and binding contract of sale between Williams and Beckmark was made. It is the law that one may set up by his answer in an ejectment action the facts showing him to have an equitable right to a conveyance from the plaintiff, and if he prove himself equitably the owner, and entitled to the possession, he will not only defeat the action but entitle himself to affirmative relief in the form of a decree requiring the

plaintiff to specifically perform his contract. Dale v. Hunneman, 12 Neb. 221, 10 N. W. 711.

This phase of the case must turn on the question whether defendant had a valid contract giving him an equitable right to a conveyance enforceable in a court of equity. No written contract was ever executed. It is a well-known provision of our statutory law that a contract for the sale of real estate is void unless the contract or some note or memorandum thereof be in writing and signed by the party by whom the sale is to be made. Sec. 36-105, R. S. 1943. Defendant contends, however, that there was sufficient part performance to require specific performance of the oral contract. In this respect we are obliged to say that there was no meeting of the minds sufficient to make a contract, either oral or written. The transaction between Beckmark and Fricke was nothing more than an offer to purchase for $2,500 provided a warranty deed and a sufficient abstract showing good title was forthcoming. When the offer was transmitted to Williams he refused to give a warranty deed or to furnish an abstract showing good title. When he learned that Beckmark was in possession, he immediately objected thereto. At no time did Williams and Beckmark ever agree upon the terms of the transaction. The down payment of $1,000 was never accepted by Williams. He did nothing to ratify the transaction. He acquiesced in nothing that could be construed as a confirmation of the sale. The cases cited by defendant are not in point. The rule is that specific performance of a parol contract will be enforced by a court of equity where one party has wholly and the other partly performed it, and its nonfulfillment on the one hand would amount to a fraud on the party who has fully performed. The cases cited by defendant sustain this principle: Kofka v. Rosicky, 41 Neb. 328, 59 N. W. 788; Morrison v. Gosnell, 76 Neb. 539, 107 N. W. 753; Hanlon v. Wilson, 10 Neb. 138, 4 N. W. 1031.

The difficulty with defendant's theory is that Williams did not give nor authorize the giving of possession to the defendant. Plaintiff has made no binding contract nor has

he performed or partially performed any purported agreement. Clearly, the defendant cannot by his own unilateral action put himself in a position to invoke the powers of a court of equity when the defendant has made no binding agreement and has so asserted at every stage of the proceedings.

The only oral contract made was between the defendant and Fricke. The latter had no authority to sell the property and agree to warrant the title and contract to furnish a good title. The letter of December 6, 1943, hereinbefore quoted in part, could be nothing more than an authorization to find a buyer. The case is very similar in its facts and the application of the law as Horn v. Stuckey, *ante* p. 625, 20 N. W. 2d 692.

We think the trial court acted correctly in denying the specific performance of the alleged parol agreement and in holding that plaintiff was entitled to possession for the reason that defendant could show no facts entitling him to an equitable conveyance of the property.

The plaintiff claims that the trial court erred in granting relief to the defendant under the Occupying Claimants Act. Sec. 76-301, R. S. 1943. That act provides in part: "Any person claiming title to real estate, whether in actual possession or not, for which he can show a plain and connected title, in law or equity, derived from the records of some public office, from the United States, or from this state, or anyone who has derived title from any such person by devise, descent, deed, contract or bond, shall not be evicted or turned out of possession of such real estate. His claim or title shall not be set aside or canceled by any court in any proceedings brought or commenced by any person setting up and proving an adverse and better title or claim to such real estate, until he shall be fully paid the value of all lasting and valuable improvements made upon such real estate by him or by those under whom he claims, * * * ."

We think it is fundamental that a claimant to compensation for improvements under this act must have held the property under color of title. An authoritative text defines the words "color of title" as follows:

"The words 'color of title' mean that which is appearance of title, but which in reality is not title. Color of title may be said to be a writing, upon its face professing to pass title, but which does not do it, either from a want of title in the person making it, or from the defective conveyance that is used—a title that is imperfect, but not so obviously imperfect that it would be apparent to one not skilled in the law. It has been declared that any instrument having a grantor and grantee, and containing a description of the lands intended to be conveyed, and apt words for their conveyance, gives color of title. Thus, one entering into possession of land under a deed which is afterward adjudged to be void and set aside for want of delivery by the grantor may, nevertheless, be regarded as holding adversely by color of title founded on a written instrument.

"There can be no color of title in an occupant who does not hold under any instrument, proceeding, or law purporting to transfer to him the title or to give him the right of possession. One who mistakes the location of his own lot and erects improvements on the adjoining property on the strength of his own survey, and notwithstanding warnings as to the true ownership, does not have color of title. Apart from a few jurisdictions in which it is recognized that color of title may exist in the absence of a writing, the rule supported by the authorities is that a writing of some sort purporting to give title is an essential of color of title." 27 Am. Jur., Improvements, s. 11, p. 267.

In Carter v. Brown, 35 Neb. 670, 53 N. W. 580, this court said: "But there is still a more serious objection to his recovery and one which goes not only to the claim for taxes paid by Lantry and his grantors, but to the claim for improvements, and taxes paid by the plaintiff in error, viz., that he is not shown to have any such title to or interest in the premises in controversy as will entitle him to the benefits of occupying claimants act. That law was intended for the protection of those occupants of real estate only who have improved the same or expended money for taxes thereon, while relying in good faith upon such title as is

mentioned in the act, and its provisions will not be extended to cases which cannot by a reasonable construction be held to be within their terms. (King v. Harrington, 18 Mich. 213; R. Co. v. Hardenbrook, 21 Kan., 440.) In the last named case it is said by Judge Valentine that 'In order to get the benefits of the occupying claimants act the records must show *prima facie* at least that at the time he made the improvements on the land he had an interest therein, and that such interest was of that high character which may properly and rightfully be denominated in law or equity a title. No interest less than an apparent title would be sufficient.' The provision of our statute is: 'That in all cases where any person claiming title to real estate, whether in actual possession or not, for which such person can show a plain and connected title in law or equity derived from the records of some public office or from the United States or from this state, or derived from any such person by devise, descent, deed, contract, or bond, such person or persons claiming or holding as aforesaid shall not be evicted or turned out of possession,' etc. What plaintiff in error was required to show was a plain and connected title in law or equity derived from the records of some public office or from another so claiming or holding by contract or bond."

In Flanagan v. Mathisen, 78 Neb. 412, 110 N. W. 1012, this court said: "The so-called 'Occupying Claimant's Act' (laws 1883, ch. 59), affording protection to persons not in the possession of disputed lands who have paid taxes and made lasting improvements thereon in good faith, claiming title to the same, and having an apparent title thereto derived connectedly by the public records from the United States or this state, is valid, and is applicable to lands of which adverse claimants had actual title at the time of its enactment."

In Sandoval v. Perez, 26 N. M. 280, 191 P. 467, a case where the defendant claimed to have entered the land under a parol contract of sale, the court said: "It is appellant's contention that a writing is not essential to color of title, and that actual adverse possession by virtue of which the

occupant claims ownership is under color of title. The statute (section 3365, Code 1915) requires the adverse possession to be under 'color of title.' An extended note will be found to the case of Brooks-Scanlon Co. v. Childs, 2 A. L. R. 1453, in which the author of the note states the prevailing rule in the United States as follows:

'By the weight of authority, same writing which purports to give title to the premises is essential to give title to an adverse occupant; and oral transactions, however effective they may be as between the parties, do not constitute color of title.' "

Other cases supporting this view are: Schimpf v. Rhodewald, 62 Neb. 105, 86 N. W. 908; Ohme v. Thomas, 134 Neb. 727, 279 N. W. 480; Marshall v. MacGregor, 314 Pa. St. 454, 171 A. 598.

It is plain to us that as defendant can produce no writing which purports to give title to the premises, he has no color of title sufficient to bring him within the terms of the Occupying Claimants Act. Generally stated, oral agreements, however effective they may be between the parties, do not constitute color of title.

Consequently, the trial court was in error in applying the Occupying Claimants Act in the present case. In our opinion that part of the decree of the trial court from which appellant appealed should be reversed. The decree in all other respects is affirmed.

AFFIRMED IN PART AND REVERSED IN PART.