The MAYOR AND COUNCIL OF ATLANTA, plaintiff in error, *vs.* the GEORGIA RAILROAD AND BANKING COMPANY, defendant.

The Mayor and Council of Atlanta were proceeding to open a street through the embankment of the Georgia Railroad, in said city, on the ground that the embankment was an obstruction to the street and a nuisance. The railroad company filed a bill praying for an injunction, and asserting a prior occupation by the railroad, and long acquiescence by the city. The Court granted the injunction, and, on the coming in of the answer, continued the injunction. As the right of the city was doubtful, under the bill, answer and affidavits, there was no error in holding up the injunction until the trial, especially as the railroad is itself, a thing in which the public has an important interest.

Injunction.    Streets.    Railroads.    Before Judge POPE. Fulton County.    Chambers.    October, 1869.

By the present map of Atlanta, going south-east, the Macon and Western Railroad crosses Pryor street and terminates in the general passenger depot, located between Pryor and Loyd streets. The Georgia Railroad begins at said depot and runs to Augusta, passing, in the same direction, Loyd street, which runs across it, Collins street, which is a *cul du sac* on its north-east side, Calhoun street, which is cut in two by it, and Butler street, over which it passes. These streets are nearly at right angles with the said railroad, and about four hundred feet apart. The freight depot and the engine house of the Georgia Railroad Company are on the south-west side of its road, between Loyd and Collins streets

and the freight depot of the Atlanta and West Point Railroad Company is on the north-east side of the Georgia Railroad, about two hundred feet south-east from Butler street.

The Mayor and Council of Atlanta and the Georgia Railroad and Banking Company got into a controversy about Butler street, which gave rise to this litigation. The Georgia Railroad and Banking Company filed a bill against the Mayor and Council of Atlanta, in which were the following averments: It was chartered on the 27th of December, 1831; in 1844 it laid out and surveyed its track into what was then Marthasville, now Atlanta, across what is now called Butler street, secured the right of way, and took possession thereof. That portion of Marthasville was then in woods and its authorities had not laid out any street where Butler street now runs, so far as complainant knows.

In 1845 the Georgia Railroad was completed, and where Butler street now is, was an embankment say fifteen feet high. From that time forward the Georgia Railroad has so occupied said ground, without hindrance. Afterwards, the Mayor and Council of Atlanta laid off Butler street, up to said embankment, on each side. In 1851, with a view to accomodate the citizens of Atlanta, complainant agreed that Pryor and Loyd streets should be opened and run across its railroad, and to open under its railroad a culvert, so as to connect the ends of Butler street, and allow travel through the same. This was done with the acquiescence of said defendant. It is indispensably necessary to have many tracks and switches over Butler street; (this is shown by the location, which is fully described;) to make an opening under its road, so as to give Butler street the full width claimed, to-wit, one hundred feet, would require a bridge, or tressel work, which, if at all practicable, would be very dangerous, and would cost say $10,000 00. Yet, in October, 1869, said defendant, regardless of complainant's rights, by resolution, instructed its engineer and street committee to remove from Butler street the obstruction caused by said embankment, and to advertise for proposals to enlarge said culvert. There is no obstruction there, except said embankment, covered by complain-

ant's railroad tracks.   The engineer had advertised, as instructed, and it is understood that the defendant intends, at once, to carry on said work.   The prayer was for injunction.

The Chancellor granted an injunction till a day certain, and ordered defendant to show cause, on that day, why it should not be continued.   The defendant, answering the bill, said: In 1843 the route was surveyed and located, and in 1844 and 1845 complainant had possession of said land and was building its road, but had not then secured the right of way at that point.   After 1843, and after Butler street was laid out, to-wit, in June, or July, 1844, L. P. Grant, who owned a half interest in the land lot, donated to it the right of way, at that point, as to his interest.   Marthasville was incorporated on the 23rd of December, 1843, and its corporate limits were a circle of one mile radius from said passenger depot, and that part of it compassing Butler street, was laid off in lots and streets, in 1843 or 1844.   True, it was then in woods and no town map was made, showing said lots and streets, but Stephen Terry, who owned the land, had laid off the lots and streets, and dedicated the latter to public use, in 1843, before complainant took possession, of said land, laying off Butler and Calhoun streets, across what is now the complainant's roadbed.   And said Terry, who was a contractor on the Georgia Railroad, cut out of Calhoun street the dirt which made the embankment across Butler street.

The Georgia Railroad was completed in September, 1845. Calhoun street was sixty feet wide, and ran across the roadbed, but the defendant consented that it should be closed, upon the promise of the complainant to open Butler street, which is but fifty feet wide.   The culvert under Butler street was made under these circumstances and no other, to-wit, the defendant and the Macon and Western Railroad, for their own benefit in 1851, petitioned the Mayor and Council of Atlanta to close Pryor street, (the Macon and Western Railroad Company desiring to put a depot where it ran) and to close Calhoun street, because it was inconvenient to the defendant, said defendant threatening, if this was not done, to remove its depot and shops out of the city.   The then Mayor and Coun-

cil of Atlanta granted the petition, with the understanding that defendant would no longer obstruct Butler street, and would open it, by providing a sufficient passway, under its track, for the public. Defendant did make a culvert under Butler street, but it is but ten feet wide and eight feet high, never fit for the purpose of such passway, and wholly unsuited since Atlanta has grown so much. The Mayor and Council of Atlanta were never satisfied with said culvert, but have ever complained of its insufficiency. So much did they complain, that complainant, in 1861, agreed to widen said culvert, to sufficient size, and carried there the timber necessary for that purpose, but for some reason unknown, took the timber away, not having widened the culvert. The necessary bridging or trestle work, etc., could be done in good style for $3,000 00, and would not be dangerous or injurious to complainant's business.

Before passing said resolution, the defendant had notified complainant, according to law, to remove said obstructions, and tried otherwise to have the matter peaceably adjusted. But complainant refusing to do anything; they gave said instructions, as they thought they might well do in law. They insisted that said injunction should not be continued.

At the hearing, each side read affidavits as to whether Butler street was laid off before the embankment was built, and the defendant read affidavits in support of the answer, as to how the culvert came to be under the railroad, the offer to widen it, in 1861, etc. After argument had, the Chancellor continued the injunction till the final hearing. This order is assigned as error.

ARNOLD & BROYLES, HILL & CANDLER, for plaintiff in error, said the complainant was bound to keep Butler street open, and its failure to do so, after legal notice, anthorized defendant to remove the obstruction: Cobb's Dig., 955; Act 31st December, 1838; Irwin's Code, secs. 747, 748; Code of Atlanta, pages 6, 8, 19.

L. J. GLENN & SON, for defendant, were about to reply, when the Court said it did not desire to hear from them.

The Mayor, etc., of Atlanta *vs.* The Ga. R. R. and Banking Co.

McCAY, J.

From the bill, answer and affidavits in this record, we are clear that the judgment of the Circuit Judge, in granting and continuing this injunction, was right. It is at least doubtful, from the evidence, whether Butler street was ever a public street across this road, except as the railroad made it so, by opening the culvert. Again, the city seems to have been satisfied with this culvert, from 1851 till this bill was filed. It is rather late in the day to insist that a nuisance which has existed over twenty years, is so intolerable, and of such immediate, pressing inconvenience, that the city cannot wait for a trial on the merits, before it is removed.

It must be remembered, that the railroad, while it is a private corporation, is, at the same time, created for the public good, and if it will be an inconvenience to the city to wait, it will be a serious inconvenience to the public to have a squad of street hands tinkering with the road-bed of the railroad.

At best, the right of the city to treat this obstruction as a nuisance, is doubtful, and it would be an abuse of the discretion of a Circuit Judge to undertake to settle this question, until a trial is had.

Our law makes this a matter to be tried by a jury, and to allow the city to go on with its work, would be an assumption by the Court, in a case like this, of the powers of the jury.

Judgment affirmed.