*381
On rehearing.

King, J.,
delivered the opinion of the co-urt.
In the spring of 1907, at an expense of about- $7,000, plaintiffs constructed a substantial cement dam, beginning at the headgates of their ditches on the south bank of the Cache la Poudre river, and thence extending across the Cache la Poudre river to the north bank thereof, a distance of about 150 feet, for the purpose, of diverting the waters of said stream into the headgates of their said ditches. To protect the dam from being cut out by high water, plaintiffs constructed an earthwork dyke or wall, extending from the north end of the dam, up the stream, and along the bank thereof, about 300 feet, to- a certain ditch, known as the Little Cache la Poudre ditch, and- headgates thereof, belonging to the defendants. Before work on the.dam was commenced, plaintiffs submitted to- defendants an offer by which, upon payment of $1,000, defendants might become the owners of an undivided interest in the dam about to be 'constructed by plaintiffs, and entitled to- put into said dam necessary head-gates for the diversion of defendants’ appropriation of water from the river, and that thereafter defendants must pay a share of the cost of maintenance and repair of the dam in the proportion that the sum of $1,000 bears to the entire cost of the dam. The Little Cache la Poudre ditch was the property of the defendant The Little Cache la Poudre Irrigating Company, which occupied and used it jointly with the defendant, The Larimer & Weld Reservoir Company, under an agreement by which the latter company was obligated to maintain the ditch and keep it in repair. The respective boards of directors of the two defendant companies were composed in part of the same persons, the Larimer and Weld company electing a majority of the board of directors of the Cache la Poudre company. In response to the foregoing offer, which was in writing, the Larimer and Weld company wrote-a- letter to plaintiffs, which was by them understood as an acceptance *382 of the offer. This understanding is clearly shown by the following letter, dated June 3, 1907, addressed by plaintiffs to The Larimer and Weld Reservoir Company:
“Fort Collins, Colorado, June 3, 1907.
Larimer and Weld Reservoir Co., Eaton, Colo.
Gentlemen: I have the letter of 3rd ult, from your Sec., Mr. Freeman, informing me of the action of your board taking an interest in the cement dam we have recently finished in the Poudre river.
I notified our respective companies as to- .your request. It will give your ditch , the same service as though you owned . the entire dam, and we are pleased to have you take an interest in it, as it will somewhat lighten the burden on our company.
We have the dam all finished and paid for. So whenever your company can arrange to send us the.$1,000.00 as per arrangement, it will be thankfully received, as we had to borrow some at the bank.
Yours very truly,
Watson Ziegler,
Pres. No. 2 Canal.”
After said letter, and pursuant to the arrangement therein mentioned, the Larimer and Weld Company paid to plaintiffs the sum of $400, receipt of which was acknowledged by plaintiffs, with request to arrange for the payment of the balance of $600, which sum, however, was never paid. The $400 payment was made after the dam was completed. When the dam was completed, the level of the water in the streafn was raised so as to cause the water to flow into the defendant’s head-gates more readily than it had before the dam was built. Thereafter, plaintiffs cut out a portion of the crest of the dam so as to lower the level of the stream and change the current to some extent. In the fall of 1910,' defendants placed new headgat'es in the north bank of the stream,' immediately above and connecting with the north end of plaintiffs’ dam. and in *383 so doing cut through and removed a portion of the plaintiffs’ dyke, constructed substantial concrete walls, the lower portion of which was set against and transversely to the north end of the defendants’ dam. Into these concrete walls, steel headgates were set, and the waters from said streams have ever since been diverted at and through such headgates by defendants and for their use.
This suit was brought by the plaintiffs in error to obtain a preliminary injunction restraining the defendants from taking possession of or interfering with the dam of the plaintiffs; for judgment permanently enjoining the defendants from utilizing defendants’ dam and diverting the waters of said stream thereby, or changing their point of diversion; and for damages in the sum of $1,000 alleged to have been sustained by the acts of defendants prior to the beginning of the suit. Prayer for temporary injunction was denied, and defendants proceeded with the construction of and completed their new headgates and ditch, and up to the time of trial remained in possession of and utilized the plaintiffs’ dam for the diversion of the waters aforesaid. On trial before the court, without jury, plaintiffs were awarded damages in the sum of $400, and the injunctive relief prayed for was denied.
1. It is conceded that the dam in question, and its lateral dyke or wall, were constructed by the plaintiffs, and, except for the negotiations mentioned, were their property, and were thereafter in the exclusive and'uninterrupted possession of plaintiffs, until entered upon by the defendants in the fall of 1910, immediately prior to the beginning of this suit. It is not shown whether these structures were on public domain, or upon lands the title of which had passed from the government; but we think the ultimate title of the lands constituting the site of these structures is not material in this case, SO' long as it does not appear that the title was in the defendants. Plaintiffs owned the structures, and were in possession thereof. The law does not recognize a right in one to go upon land in the possession of another, and, taking pos *384 session thereof, to- build a structure thereon without the latter’s consent and against his wishes. Such a rule would tend to invite a breach of the peace, and legalize force and violence. An entry in such case must be made under proper judicial authority. — Larimer & Weld Irr. Co. v. Landers, 23 Colo. App. 84, 141 Pac. 517, 519. Neither the acts of congress relative to public domain, nor the statutes of the state relative to irrigation, both of which recognize and grant a right to enter the public streams-for the purpose of diverting water for irrigation, permit an entry upon or taking possession of the irrigation works of another without consent or appropriate proceedings at law. No judicial proceeding was instituted by defendants, and their acts in invading the possession of the plaintiffs can only be justified, if at all, by the negotiations hereinbefore mentioned, by virtue of which defendants paid, and the plaintiffs received and retained, $400 toward the cost of construction of said dam. Defendants, in justification of their acts complained of, allege that they had an interest in the said dam by virtue of certain negotiations between the plaintiffs and defendants, pursuant to- which $400 was paid and retained; but both parties seem to- have sought to. avoid the obvious, and necessary results of such- negotiations if the acts of the defendants, as shown by the evidence, constituted an acceptance of the offer made. Defendants also- pleaded the act of plaintiffs in cutting down the crest of the dam as a justification for changing their point of diversion, but neither asked for damages nor recoupment from the stipulated purchase price of an interest in the dam, nor did they offer proof that damage had been sustained. The trial court did not specifically find or hold that the offer, as a whole, had been accepted, but, upon a finding that some interest in the dam had been acquired by defendants by the payment and acceptance of $400, held that plaintiffs were estopped from asking for injunctive relief.
2. We think the evidence establishes an acceptance by The Larimer and Weld Reservoir Company of the offer made by the plaintiffs, and part payment made pursuant thereto, *385 notwithstanding the denial made during the trial that defendants had made a definite contract to pay the additional sum of $600. That such was the understanding of the plaintiffs, and that the payment was a condition precedent to the acquirement of an interest in the dam, is clearly shown by the evidence, and such understanding was not denied by the defendants. Without any other justification in law or equity, they took possession of the plaintiffs’ works and utilized them, and in defense of this action pleaded the payment aforesaid, which had no other basis- or consideration than the offer aforesaid and its acceptance. We think they are now estopped from denying that they accepted the offer as it was made; and that before they were entitled to take possession of the dam, or interfere with plaintiffs’ possession and ¡control thereof, they were required to pay the balance of the amount, upon payment of which they would have had full right and authority to- utilize the dam by placing headgates therein for the diversion of their water. Such offer was- never withdrawn by the plaintiffs. It is difficult to see how defendants can escape this conclusion, without pleading or admitting trespass; and, surely, they should not be allowed to successfully interpose such a defense.
3. The amount allowed by the court as damages was founded upon evidence that it would require that amount to place the lateral dyke or wall in as good condition for the protection of the dam as it was before the defendants made the breach therein, and failure to restore the dyke to its former condition of efficiency was a proper subject for damages, without regard to the contractual relations constituted by the foregoing offer and its acceptance.
4. The most serious legal question presented is whether the court should be sustained in denying all injunctive relief. It is possible that plaintiffs had an adequate remedy at law, by action for the balance of the purchase price, of an interest in the dam under the contract, and for damages; but it is not unusual for courts of equity to- interfere by injunction in aid *386 of possession of real property when the title of the person in possession is established, or not disputed, or where defendants attempt or threaten to take possession without right or authority of law, as, for instance, before payment of the appraised value of improvements made thereon, without which payment they would not be entitled to possession, or where, upon condemnation proceedings compensation has been awarded, but not paid; or where no- proceedings for awarding compensation have been taken. In such cases, injunction is conditionally granted against the taking of possession until compensation is paid or condemnation proceedings instituted. High on Injunc. (4th Ed), §§ 356, 429a, 830-832; Leighton v. Young, 52 Fed. 439, 3 C. C. A. 176, 18 L. R. A. 266; Harrington v. St. Paul & Sioux City R. Co., 17 Minn. 215 (Gil. 188); Mayor, etc., v. Georgia R. & B. Co., 40 Ga. 471; Stewart’s Appeal, 56 Pa. 413 ; Conway et al., Ex parte, 4 Ark. 302.
Moreover, the acts of defendants in taking and retaining possession of plaintiffs’ works, if trespass, constituted a continuing trespass which threatened to' ripen into a permanent easement, for which injunction will lie, although no actual substantial damage is shown, High on Injunc., Vol. 1, p. 671; Amsterdam Knitting Co. v. Dean, 162 N. Y. 278, 56 N. E. 757; Mott v. Ewing, 90 Cal. 231, 27 Pac. 194; Richards v. Dower, 64 Cal. 62, 28 Pac. 113; Boglino v. Giorgetta, 20 Colo. App. 338, 78 Pac. 612; Walker v. Emerson, 89 Cal. 456. 26 Pac. 968.
We think the defendants should have been restrained from taking possession of, or, after taking possession, from utilizing the dam and other works of the plaintiffs until they had made payment of the amount, payment of which was a condition precedent to defendants’ taking advantage of plaintiffs’ consent to so possess and utilize their works. Under the circumstances disclosed, we perceive no- necessity for relegating the plaintiffs in this case to another suit or forum for a *387 complete determination of all matters fairly raised by the pleadings, and in issue.
The judgment of the court, awarding damages to the plaintiffs, and denying plaintiffs’ prayer for injunction against the right of defendants to change point of diversion, is affirmed. The judgment, so far as it denied a conditional restraining order, is reversed, and the cause remanded, with instructions to the trial court to enjoin and restrain the defendants from utilizing their headgates in the plaintiffs’ dam for the diversion of water, until they shall have paid to plaintiffs, or deposited in court for their use, the sum of $600, with interest from December 1, 1910; each party to pay its own costs, both in this court and in the trial court.

Reversed in part, affirmed in part.